1   JENNIE LEE ANDERSON (SBN 203586)
    jennie@andrusanderson.com
2   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
3   San Francisco, CA  94104
    Telephone:   (415) 986-1400
4   Facsimile:    (415) 986-1474

5   ELIZABETH A. FEGAN (*motion for pro hac vice forthcoming*)
6   beth@feganscott.com
    TIMOTHY A. SCOTT (*motion for pro hac vice forthcoming*)
7   tim@feganscott.com
    FEGAN SCOTT LLC
8   150 S. Wacker Dr., 24th Floor
    Chicago, IL 60606
9   Telephone:   (312) 741-1019
    Facsimile:    (312) 264-0100
10

11  J. BARTON GOPLERUD (*motion for pro hac vice forthcoming*)
    goplerud@sagwlaw.com
12  SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.,
    5015 Grand Ridge Drive, Suite 100
13  West Des Moines, Iowa 50265

14  *Attorneys for Plaintiffs*

15

16              **UNITED STATES DISTRICT COURT**

17         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18                    **SAN JOSE DIVISION**

19  ANDREW COHEN, KALEAH C. ALLEN,          Case No.:
    KIMBERLY BENJAMIN, TIMOTHY
20  HORNICK, NICHOLAS CARLSON,              **CLASS ACTION COMPLAINT**
    JONATHAN WOLFE, MARK WEILER, CHAD
21  SMITH, SARAH D. SMITH, and SCOTT        **DEMAND FOR JURY TRIAL**
    CISCHKE, individually and on behalf of all
22  others similarly situated,

23              **Plaintiffs,**

24          vs.

25

26  APPLE, INC. and SAMSUNG ELECTRONICS
    AMERICA, INC.
27
                **Defendants.**
28

Plaintiffs Timothy Hornick, Andrew Cohen, Kaleah C. Allen, Kimberly Benjamin, Nicholas Carlson, Mark Weiler, Chad Smith, Sarah D. Smith, Matt Koppin, Scott Cischke, and Albert Collins, by and through their attorneys, for their Complaint, allege as follows based upon their personal information and investigation of their attorneys:

## I.      INTRODUCTION

1.      If a cellphone is marketed and sold to consumers, the device is never supposed to exceed the maximum allowable limit for radiofrequency ("RF") radiation exposure.

2.      In fact, Defendants market and sell some of the most popular smartphones in the world – including Apple's iPhones and Samsung's Galaxy phones -  as emitting less RF radiation than that set by law and as being completely safe to carry and use on or in close proximity to the human body.

3.      Hold your smartphone to your ear for a phone call? No problem, say Defendants. Carry your smartphone in your back pocket? Of course, say Defendants.  Use your smartphone to conduct a sonogram of your unborn child in utero? That's ok too, according to Samsung.

4.      In fact, however, recent testing of Defendants' products shows that the potential exposure for an owner carrying the phone in a pants or shirt pocket was over the exposure limit, sometimes far exceeding it – in some instances by 500 percent.

5.      Numerous recent scientific publications, supported by hundreds of scientists worldwide, have shown that RF radiation exposure affects living organisms at levels well below most international and national guidelines. Effects include increased cancer risk, cellular stress, increase in harmful free radicals, genetic damages, structural and functional changes of the reproductive system, learning and memory deficits, neurological disorders, and negative impacts on general well-being in humans.  Thus, Defendants' design, manufacture, and sale of smartphones that far exceed federal guidelines exacerbates the health risks to Plaintiffs and the Classes.

6.      Plaintiffs thus bring this Complaint for negligence, breach of warranty, consumer fraud and unjust enrichment, seeking actual damages, the costs of medical monitoring, restitution and injunctive relief.

## II.   JURISDICTION

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

8.     Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events giving rise to the claims occurred in this District.

## III.   INTRADISTRICT ASSIGNMENT

9.     Assignment to the San Jose division of this district is appropriate under Civil Local Rule 3-2 because a substantial part of the events or omissions which give rise to the claims occurred in the San Jose division.

## IV.   PARTIES

### A.  Plaintiffs

10.     Andrew Cohen is a resident of Scottsdale, Arizona and citizen of the United States. Cohen purchased an iPhone X in August 2017, and regularly carries and uses the phone on or near his body.  Cohen would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Cohen has been damaged and is now at risk for problems associated with RF radiation exposure.

11.     Kaleah C. Allen is a resident of Des Moines, Iowa and citizen of the United States. Allen purchased an iPhone 8 in January 2018, and regularly carries and uses the phone on or near her body.  Allen would not have purchased the phone and/or would not have paid as much for the phone had she understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Allen has been damaged and is now at risk for problems associated with RF radiation exposure.

12.     Kimberly Benjamin is a resident of Raymore, Missouri and citizen of the United States. Benjamin purchased an iPhone X in or about 2017, and regularly carries and uses the phone on or

near her body.  Benjamin would not have purchased the phone and/or would not have paid as much for the phone had she understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Benjamin has been damaged and is now at risk for problems associated with RF radiation exposure.

13.    Timothy Hornick is a resident of Windber, Pennsylvania and citizen of the United States. Hornick purchased an iPhone 8 in January 2018, and regularly carries and uses the phone on or near his body.  Hornick would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Hornick has been damaged and is now at risk for problems associated with RF radiation exposure.

14.    Nicholas Carlson is a resident of Lake Worth, Florida and citizen of the United States. Carlson purchased an iPhone 7 Plus in September 2016, and regularly carries and uses the phone on or near his body.  Carlson would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Carlson has been damaged and is now at risk for problems associated with RF radiation exposure.

15.    Mark Weiler is a resident of Fargo, North Dakota, and citizen of the United States. Weiler received a replacement iPhone 8 in January 2019 through insurance, and regularly carries and uses the phone on or near his body.  Weiler would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Weiler has been damaged and is now at risk for problems associated with RF radiation exposure.

16.    Scott Cischke is a resident of LaGrange Park, Illinois, and citizen of the United States. Cischke purchased an iPhone X in June 2018, and regularly carries and uses the phone on or near his body.  Cischke would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Cischke has been damaged and is now at risk for problems associated with RF radiation exposure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17.     Matt Koppin is a resident of Yorkville, Illinois and citizen of the United States. Koppin purchased an iPhone 8 in Spring 2018, and regularly carries and uses the phone on or near his body. Koppin would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Koppin has been damaged and is now at risk for problems associated with RF radiation exposure.

18.     Albert Collins is a resident of Indio, California and citizen of the United States. Collins purchased a Galaxy S8, and regularly carries and uses the phone on or near his body.  Collins would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Apple's actions as alleged herein, Collins has been damaged and is now at risk for problems associated with RF radiation exposure.

19.     Sarah D. Smith is a resident of Harrisburg, Pennsylvania and citizen of the United States. Smith purchased a Samsung Galaxy Note 8 in or about January 2018, and regularly carries and uses the phone on or near her body.  Smith would not have purchased the phone and/or would not have paid as much for the phone had she understood the risk of radiation exposure from the phone. As a result of Samsung's actions as alleged herein, Smith has been damaged and is now at risk for problems associated with RF radiation exposure.

20.     Chad Smith is a resident of Harrisburg, Pennsylvania, and citizen of the United States. Smith purchased a Galaxy S8 in June 2018, and regularly carries and uses the phone on or near his body.  Smith would not have purchased the phone and/or would not have paid as much for the phone had he understood the risk of radiation exposure from the phone.  As a result of Samsung's actions as alleged herein, Smith has been damaged and is now at risk for problems associated with RF radiation exposure.

21.     Andrew Cohen, Kaleah C. Allen, Kimberly Benjamin, Timothy Hornick, Nicholas Carlson, Mark Weiler, Matt Koppin, and Scott Cischke are collectively referred to as the "Apple Plaintiffs."  Chad Smith, Sarah D. Smith, and Albert Collins are collectively referred to as the "Samsung Plaintiffs". The Apple Plaintiffs and Samsung Plaintiffs are collectively referred to as "Plaintiffs."

**B.  Defendants**

22.    Apple, Inc. ("Apple") is a California corporation with its headquarters and principal place of business in Cupertino, California, which lies within this District. Apple designs, manufactures and sells various consumer electronics, computer software and online services. Apple's consumer electronics products include the iPhone 8 and iPhone X. In addition to being headquartered and having its principal place of business in Cupertino, California, Apple transacts substantial business throughout the State of California, through advertising, marketing and ownership of numerous Apple retail stores throughout California, including several in this District.  Apple also transacts business nationwide, advertising, marketing, distributing and selling its iPhone products nationwide and ownership of Apple retail stores in 44 states and the District of Columbia.

23.    Samsung Electronics America, Inc. ("Samsung") is a New York corporation that maintains its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07669. In 2015, Samsung opened the Samsung Device Solutions America campus at 3655 North 1st Street, San Jose, CA 95134, where it maintains its home to Samsung's digital health and data center projects. In addition to maintaining its campus in San Jose, California, Samsung transacts substantial business throughout the State of California.  Samsung also transacts business nationwide, advertising, marketing, distributing and selling its smartphone products nationwide.

///
///
///
///
///
///
///
///
///
///

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V.   SUBSTANTIVE ALLEGATIONS

## A.  The Role of Smartphones in American Culture

24.     According to Pew Research Center, 96 percent of Americans own a cellphone of some kind.[1]  Of those, 81 percent own smartphones,[2] up from just 35% in Pew Research Center's first survey of smartphone ownership conducted in 2011.[3]

25.     Roughly 20 percent of American adults are "smartphone-only" internet users, meaning they own a smartphone but don't otherwise subscribe to internet service.[4]

26.     According to the Chicago Tribute, there are currently an estimated 285 million smartphones in active use in the United States.[5]

27.     And, 29 percent of U.S. teens sleep with their cellphones in bed with them, according to a 2019 report by the nonprofit organization Common Sense Media.

## B.   Defendants Market and Sell Their Smartphones as Being Safe to Use on and Close to the Human Body at All Times.

28.     Widely recognized as Apple's premier product line, iPhone is a line of industry-leading smartphones that debuted on June 29, 2007.

29.     When Steve Jobs introduced the iPhone in 2007, he described it as "the Internet in your pocket for the first time ever."  He emphasized that the "iPhone is like having your life in your pocket."[6]  And displayed behind Jobs as he launched the iPhone was the following picture:

---

[1] https://www.pewinternet.org/fact-sheet/mobile/ (last visited August 23, 2019).

[2] PC Magazine defines the term "smartphone" as "[a] cellphone and handheld computer that created the greatest tech revolution since the Internet. A smartphone can do everything a personal computer can do, and because of its mobility, much more . . . A smartphone combines a cellphone with e-mail and Web, music and movie player, camera, camcorder, GPS navigation, voice recorder, alarm clock, flashlight, photo album, address book and a lot more. It is also a personal assistant that delivers information and answers questions about almost everything …. A lot more personal than a personal computer, a smartphone is generally within reach at all times." *See* http://www.pcmag.com/encyclopedia/term/51537/smartphone (last visited August 23, 2019).

[3] *Id.*

[4] *Id.*

[5] https://www.chicagotribune.com/investigations/ct-cell-phone-radiation-testing-20190821-72qgu4nzlfda5kyuhteiieh4da-story.html (last visited August 23, 2019).

[6] https://thenextweb.com/apple/2015/09/09/genius-annotated-with-genius/ (last accessed August 23, 2019).



30.     In July of 2016, Apple celebrated the sale of its billionth iPhone.[7] Apple included within the press release announcing that milestone sale the following quote from its CEO Tim Cook: "iPhone has become one of the most important, world-changing and successful products in history. It's become more than a constant companion. iPhone is truly an essential part of our daily life and enables much of what we do throughout the day."[8]

31.     Throughout the years, Apple has continued to expound on the theme of keeping the iPhone in your pocket.

32.     For example, in May 2018, Apple released a commercial for iPhone X, touting the phone's camera and portrait lighting capabilities.  In the ad, a woman is seen taking the iPhone X out of her pocket. Immediately, lights, umbrellas and all of the other trappings of a professional studio appear around her.[9]

33.     The commercial ends with the slogan "Studio in Your Pocket":[10]

---

[7] https://www.apple.com/newsroom/2016/07/apple-celebrates-one-billion-iphones.html (last visited August 23, 2019).
[8] *Id.*
[9] https://www.youtube.com/watch?v=NApRGgbm480 (last accessed August 23, 2019).
[10] https://www.youtube.com/watch?v=NApRGgbm480 (last accessed August 23, 2019).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



34.     Apple's commercials also regularly show people listening to music through headphones with their iPhones in their pockets[11] or using the iPhones while holding it in their bare hands.[12]

35.     Apple's commercials show people using iPhones in their beds,[13] even being held against a person's body as they fall asleep while watching a video.[14]

36.     Following Apple's lead, Samsung launched the first android-based smartphone in April 2009. The Galaxy S series of smartphones has made Samsung the biggest seller of smartphones in the world.

37.     Like Apple, Samsung advertises people using its smartphones in close proximity to their bodies.

38.     For example, one commercial shows a pregnant woman lying in bed and touching the cell phone to her belly to take a sonogram of her child in utero. In the same commercial, a child has s smartphone tucked into his backpack. [15]

---

[11] https://www.ispot.tv/ad/wC3Y/apple-iphone-x-sway-song-by-sam-smith (last accessed August 23, 2019).
[12] https://www.ispot.tv/ad/I9eg/apple-iphone-privacy-on-iphone-inside-joke (last accessed August 23, 2019).
[13] https://www.ispot.tv/ad/IjPm/apple-iphone-xr-and-xs-depth-control-alejandro; https://www.ispot.tv/ad/I_8y/apple-iphone-private-side (last accessed August 23, 2019).
[14] https://www.ispot.tv/ad/oVp4/apple-iphone-xr-battery-life-up-late-song-by-julie-andrews (last accessed August 23, 2019).
[15] https://www.adsoftheworld.com/media/film/samsung_samsung_galaxy_the_future (last accessed August 23, 2019).

39.     Another commercial shows a hiker take the Samsung phone out of her back pants' pocket at the summit.[16]

40.     Thus, at all relevant times, Defendants have touted the use of their smartphones as being safe and appropriate to use while touching or within close proximity to the human body.

## C.  The Dangers of Cellphone Exposure

### 1.  Radio Frequency (RF) Exposure

41.     Cellphones use radio waves to communicate with a vast network of fixed installations called base stations or cell towers. These radio waves are a form of electromagnetic radiation, in the same frequency range used by TVs and microwave ovens.

42.     The public relations position from cellphone manufacturers, including Defendants, is that this kind of radiation, also known as radio frequency (RF) exposure, is not the same as ionizing radiation, such as gamma rays and X-rays, which can strip electrons from atoms and cause serious biological harm, including cancer.

43.     However, RF exposure, sometimes also called non-ionizing electromagnetic field exposure, at high levels can heat biological tissue and cause harm. Eyes and testes are especially vulnerable because they do not dispel heat rapidly.

44.     In fact, in 2015, more than 150 scientists from around the world sent an appeal to the United Nations and World Health Organization, calling for more protective RF exposure guidelines, and education of the public concerning the attendant health risks, particularly to children and fetal development.

45.     The appeal, titled "International Appeal: Scientists call for Protection from Non-ionizing Electromagnetic Field Exposure," was signed by 40 scientists in the United States, including a Member of the U.S. National Academies of Sciences Committee for Radio Frequencies; a retired leader of the National Toxicology Project's health effects studies of cell phone radio frequency radiation under the National Institute of Environmental Health Sciences; and multiple physicians and scientists from esteemed universities, such as Harvard, Columbia, UCLA, USC and others.

---

[16] https://www.bestadsontv.com/ad/107658/Samsung-Do-What-You-Cant (last accessed August 23, 2019).

CLASS ACTION COMPLAINT

46.    In relevant part, the appeal explained the risk of RF exposure:

> Numerous recent scientific publications have shown that EMF affects living organisms at levels well below most international and national guidelines. Effects include increased cancer risk, cellular stress, increase in harmful free radicals, genetic damages, structural and functional changes of the reproductive system, learning and memory deficits, neurological disorders, and negative impacts on general well-being in humans.

47.    Moreover, in the fall of 2018, in one of the largest studies to date, the National Toxicology Program ("NTP"), a research group within the National Institutes of Health, U.S. Department of Health and Human Services, found that high exposure to the kind of radiofrequency radiation used by cellphones was associated with "clear evidence" of cancerous heart tumors in male rats.

48.    The NTP studies were conducted to test the assumption that cell phone radiofrequency radiation could not cause cancers or other adverse health effects (other than by tissue heating) because this type of radiation (non-ionizing) did not have sufficient energy to break chemical bonds.[17]

49.    The results of the NTP studies demonstrated that cell phone radiation caused Schwann cell cancers of the heart and brain gliomas in rats, as well as DNA damage in the brain.[18]

50.    Consistent with these findings, in May 2011, the International Agency for Research on Cancer (IARC), a part of the World Health Organization, classified radio-frequency radiation from wireless devices as a "possible human carcinogen" based largely on findings of increased risks of gliomas (a malignant type of brain cancer) and Schwann cell tumors in the brain near the ear in humans after long term use of cellphones.[19] Thus, the same tumor types are elevated in both animals and humans exposed to cell phone radiation.

**2.  Testing for RF Exposure**

51.    When cellphones hit the market in the 1980s, authorities focused on setting an exposure limit to address only the heating risks of cellphones. Scientists found that animals showed adverse

---

[17] https://thehill.com/opinion/healthcare/416515-theres-a-clear-cell-phone-cancer-link-but-fda-is-downplaying-it (last accessed August 23, 2019).
[18] https://thehill.com/opinion/healthcare/416515-theres-a-clear-cell-phone-cancer-link-but-fda-is-downplaying-it (last accessed August 23, 2019).
[19] https://www.iarc.fr/wp-content/uploads/2018/07/pr208_E.pdf (last accessed August 23, 2019).

effects when exposed to enough radiofrequency radiation to raise their body temperature by 1 degree Celsius. Authorities used this finding to help calculate a safety limit for humans, building in a 50-fold safety factor.

52.    The final rule, adopted by the Federal Communications Commission ("FCC") in 1996, stated that cellphone users cannot potentially absorb more than 1.6 watts per kilogram averaged over one gram of tissue. To demonstrate compliance, phone makers were told to conduct two tests: when the devices were held against the head and when held up to an inch from the body.

53.    Before a new cellphone model can be brought to market, a sample phone must be tested and comply with an exposure standard for radiofrequency radiation.

54.    Companies testing a new phone for compliance with the safety limit are permitted to position the phone up to 25 millimeters away from the body — nearly an inch — depending on how the device is used.

55.    Nonetheless, on its website, in the "Legal" section, Apple warrants that it tests the iPhone at the "highest transmission levels and placed in positions that simulate uses against the head, ***with no separation***, and when worn or carried against the torso of the body, with 10mm separation."[20]

///

///

///

///

///

///

///

///

///

///

---

[20] https://www.apple.com/legal/rfexposure/iphone5,1/en/ (emphasis supplied) (last accessed August 23, 2019). Apple also warrants that it tests its iPods at 5mm separation. https://www.apple.com/legal/rfexposure/ipod5,1/en/ (last accessed August 23, 2019).

56.     For some past models, Apple's website told users of the iPhone 4 and 4s: "Carry iPhone at least 10mm away from your body to ensure exposure levels remain at or below the as-tested levels." The site says those phones were tested at a distance of 10 millimeters.

57.     When Apple submitted its application to the FCC to market the iPhone 7, the company included a similarly worded radiation statement, suggesting users carry the device at least 5 millimeters from the body, records show.

58.     But iPhone 7s (and subsequent models) sold to the public did not include that advice.[21]

59.     Similarly, on its website, Samsung provides users the opportunity to check the RF emission levels on its website. Samsung represents not only its smartphones meet federal

---

[21] https://www.chicagotribune.com/investigations/ct-cell-phone-radiation-testing-20190821-72qgu4nzlfda5kyuhteiieh4da-story.html (last accessed August 23, 2019).

CLASS ACTION COMPLAINT

requirements, but also that "Body-worn SAR testing has been carried out at a separation distance of 0.0 cm." Samsung thus implies that using, carrying or wearing its smartphones on or in close proximity to the human body is completely safe.

### 3. Testing RF Exposure Shows Clear Risk to Plaintiffs and the Class

60.     Beginning in or about August 2018, the Chicago Tribune hired RF Exposure Lab in San Marcos, California to measure eleven different cellphone models for radiofrequency radiation.[22]

61.     RF Exposure, an accredited testing lab recognized by the FCC, has conducted radiation tests for fifteen years for wireless companies seeking FCC approval for new products.[23]

62.     In August and October 2018, twelve phones were tested: three iPhone 7s, an iPhone X, an iPhone 8, an iPhone 8 Plus, a Galaxy S9, a Galaxy S8, a Galaxy J3, a Moto e5 Play, a Moto g6 Play and a Vivo 5 Mini (collectively, the "Affected Phones"). [24]

63.     According to the lab, all of the tests were done in accordance with FCC rules and guidelines. [25]

64.     In one phase of the testing, all phones were positioned at the same distance from the simulated body tissue that the manufacturers chose for their own tests — from 5 to 15 millimeters, depending on the model.[26]

65.     Prior to each test, the laboratory reviewed the publicly-available testing data that phone manufacturers had submitted to the FCC to demonstrate compliance with radiofrequency radiation limits and gain permission to market the devices. [27]

66.     For each phone model, the laboratory determined which licensed band, frequency and channel yielded the highest radiofrequency radiation reading in the manufacturer's own tests, and then replicated this configuration. [28]

---

[22] https://www.chicagotribune.com/investigations/ct-cell-phone-radiation-testing-methodology--20190821-whddrljk6fbmxoqh25u5t7lkb4-story.html (last accessed August 23, 2019).
[23] *Id.*
[24] *Id.*  Plaintiffs expect that the list of smartphones included in this group will expand with discovery.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

67.     To conduct the tests, each phone was placed underneath a tub containing specially formulated liquid intended to simulate the electrical properties of human body tissue. [29]

68.     The laboratory used a base station simulator to place a call to the phone and adjusted the base station's settings to replicate the desired configuration, causing the phone to operate at full power. [30]

69.     A probe attached to a robotic arm then moved in the liquid for eighteen minutes, taking 276 measurements of the radiofrequency radiation absorbed. The results constituted the Specific Absorption Rate, or SAR, which must be under the federal safety limit. [31]

70.     Two tests were conducted on each phone. In the first tests, each device was placed the same distance away from the outside of the tub that the manufacturers selected when they tested the phone.[32]

71.     In the second test, the phones were placed 2 millimeters from the tub, a smaller distance meant to reflect a phone being carried in a pants or shirt pocket, based on actual measurements of pieces of dress shirts, T-shirts, jeans, track pants and underwear. [33]

72.     In a second round of testing in March 2019, a person touched or grasped the originally-tested iPhones, plus one additional one, for the duration of the process.  This was action intended to activate sensors designed to reduce the phones' power. [34]

73.     The results by model follow.

74.      For the iPhone 7 models, in the original or standard test at 5 millimeters, the RF exposure averaged 2.59 W/kg – more than the 1.6 W/kg limit.  In the second or modified test at 5 millimeters, the RF exposure averaged 3.225 W/kg – more than twice the federal exposure limit.[35] At 2 millimeters, results from the original and modified tests ranged from 3.5 W/kg to 7.15 W/kg.

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] https://www.chicagotribune.com/investigations/ct-cell-phone-radiation-testing-20190821-72qgu4nzlfda5kyuhteiieh4da-story.html (last accessed August 23, 2019).

CLASS ACTION COMPLAINT



75.   The Apple iPhone X and iPhone 8 each scored three out of four tests above the federal limit of 1.6W/kg:



1

2      76.     When tested at 2 millimeters, the Samsung Galaxy S8 exceeded the federal limit by

3   more than 500 percent:



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20      77.     These results are not an aberration, but instead reflect actual emissions conducted by an

21   FCC-accredited laboratory under the same conditions used by the manufacturers themselves.

22      78.     Notwithstanding these results and the studies reflecting the dangers inherent at these

23   levels, Defendants have failed to take steps to prevent this excessive RF radiation exposure or to warn

24   Plaintiffs and the Class of the dangers associated with using their products.

25              **VI.    CLASS ACTION ALLEGATIONS**

26      79.     The Apple Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil

27   Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the

28

following "Apple Class":  "All persons who purchased an iPhone 7, 8, or X for personal or household use in the United States."

80.   The Samsung Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the following "Samsung Class":  "All persons who purchased a Samsung Galaxy S8, S9, or J3 for personal or household use in the United States."

81.   Specifically excluded from the proposed Classes are Defendants, any of their past, present or future officers, directors, trustees, agents, representatives, employees, principals, trusts, partners, joint ventures or controlled entities; any successors, assigns, heirs or other persons or entities related to or affiliated with Defendants; the Judge assigned to this action; and any member of the Judge's immediate family.

82.   ***Numerosity.*** The members of the Classes are so numerous as to render their individual joinder impracticable. Although the precise number of Class members is unknown, based upon information and belief Plaintiffs allege that the Class contains millions of members.

83.   The true number of Class members is known by Defendants, however, and, thus, may be notified of the pendency of this action through electronic mail, first class mail and/or by published notice.

84.   ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact applicable to all members of the Class predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether Apple and Samsung properly tested their smartphones before selling them to the Plaintiffs and the Class;

    b.   Whether Apple and Samsung represented and/or warranted that their smartphones were safe for ordinary use;

    c.   Whether the smartphones were safe for ordinary use;

    d.   Whether the RF radiation from the smartphones placed Plaintiffs and Class members at risk for cancer and other health problems;

e.  Whether Defendants owed a duty to Plaintiffs and Class members to disclose the dangers of their smartphones;

f.  Whether Defendants intentionally misrepresented the safety of the Plaintiffs' and Class members' smartphones to them and the public;

g.  Whether Plaintiffs or Class Members are entitled to medical monitoring;

h.  Whether Plaintiffs and the members of the Class have sustained financial loss, and the proper measure of any such financial loss;

i.  Whether Plaintiffs and the members of the Class are entitled to restitution;

j.  Whether Plaintiffs and the members of the Class are entitled to damages, and the proper measure of any such damages.

85.  **Typicality.** Plaintiffs' claims are typical of those held by the other members of the Class in that each of them own one of Defendants' smartphones that exceed federal RF radiation exposure limits.

86.  **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained trial counsel highly experienced in complex litigation including complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests in this action that are adverse or antagonistic to the interests of the Class.

87.  **Superiority.** Class action litigation is superior to all other available means for the fair and efficient adjudication of this controversy. The damages, harm and financial detriment suffered by individual members of the Class are relatively minor compared to the burden and expense that would be entailed by individual prosecution of their claims against Defendants.

88.  It would thus be practically impossible for the members of the Class, on an individualized basis, to effectively seek and obtain redress for the wrongs committed against them. In addition, even if the Class members could —and realistically would be willing—to pursue such individualized litigation, this Court likely could not reasonably sustain the imposition on resources that individualized litigation over this controversy would entail.

89.  Further, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the identical factual predicate.

90.    Individualized litigation would also result in a substantial increase in the time and expense required of the parties and the Court to address the issues raised by this litigation.

91.    By contrast, litigation of the controversy outlined herein as a class action provides the benefits of adjudication of these issues in a single, unitary proceeding, provides substantial economies of scale, allows comprehensive supervision of the legal and factual issues raised herein by a single court, and presents no unusual management difficulties under the circumstances presented here.

92.    Damages may be calculated from the data maintained in Defendants' and third-party carriers' records, so that the cost of administering a recovery for the Class can be minimized. The precise measure of damages available to Plaintiffs and the Class, however, is not a barrier to class certification.

## VII.   CLAIMS ALLEGED

### COUNT I
### NEGLIGENT MISPRESENTATION AGAINST APPLE

93.    The Apple Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here.

94.    Apple had a duty to communicate accurate information to Plaintiffs about the RF exposure from their iPhones.

95.    Defendant intentionally misrepresented the safety of the iPhones, assuring Class Members that the iPhones had been adequately tested, and were safe to use on and in close proximity to their bodies at all hours of the day and night, despite information within its knowledge indicating that the RF exposure was linked to cancer and other health risks.

96.    Even when repeatedly faced with a wealth of warnings from scientists and the dangers associated with RF exposure from smartphones, Defendant continues to make no effort to protect or warn current or prospective owners of its iPhones. Rather, Defendant has turned a blind eye to these inconvenient truths, opting to double-down on statements that the iPhones are safe to use without restriction on placement.

CLASS ACTION COMPLAINT

97.   Plaintiffs, in reliance on Defendant's claims regarding the ways in which the iPhone was safe to and should be used, continued to use and place the iPhone on and in close proximity to their bodies.

98.   Plaintiffs' reliance was justified given Defendant's superior position of authority and knowledge.

99.   As a result, on information and belief, Plaintiffs have been exposed to harmful levels of RF radiation that could negatively affect their health for many years to come.

100.   Plaintiffs and Class members are thus entitled to the establishment of a medical monitoring program that includes, among other things: (i) Establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of all Class members; and (2) Notifying all Class members in writing that they may require frequent medical monitoring necessary to diagnose conditions resulting from RF radiation exposure.

## COUNT II
## NEGLIGENT MISPRESENTATION AGAINST SAMSUNG

101.   The Samsung Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here.

102.   Samsung had a duty to communicate accurate information to Plaintiffs about the RF exposure from their iPhones.

103.   Defendant intentionally misrepresented the safety of the iPhones, assuring Class Members that the iPhones had been adequately tested, and were safe to use on and in close proximity to their bodies at all hours of the day and night, despite information within its knowledge indicating that the RF exposure was linked to cancer and other health risks.

104.   Even when repeatedly faced with a wealth of warnings from scientists and the dangers associated with RF exposure from smartphones, Defendant continues to make no effort to protect or warn current or prospective owners of its iPhones. Rather, Defendant has turned a blind eye to these inconvenient truths, opting to double-down on statements that the iPhones are safe to use without restriction on placement.

105.   Plaintiffs, in reliance on Defendant's claims regarding the ways in which the iPhone was safe to and should be used, continued to use and place the iPhone on and in close proximity to their bodies.

106.   Plaintiffs' reliance was justified given Defendant's superior position of authority and knowledge.

107.   As a result, on information and belief, Plaintiffs have been exposed to harmful levels of RF radiation that could negatively affect their health for many years to come.

108.   Plaintiffs and Class members are thus entitled to the establishment of a medical monitoring program that includes, among other things: (i) Establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of all Class members; and (2) Notifying all Class members in writing that they may require frequent medical monitoring necessary to diagnose conditions resulting from RF radiation exposure.

## COUNT III
## NEGLIGENCE AGAINST APPLE

109.   The Apple Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here.

110.   Apple owed Plaintiffs a duty to exercise reasonable care in selling smartphones that emitted RF radiation at safe levels when placed on or in close proximity to their bodies.

111.   Defendant failed to exercise reasonable care when, after knowingly designing and manufacturing iPhones whose RF exposure exceeded safe limits when used on or in close proximity to the human body, it did not take any measures to warn or protect Plaintiffs and Class members from RF exposure and, instead, covered up any risks by misrepresenting the safety of the smartphones.

112.   Defendant knew or should have known that Plaintiffs and the Class members would foreseeably suffer injury from RF radiation exposure as a result of Defendant's failure to exercise ordinary care.

113.   Defendant's negligence proximately caused Plaintiffs' and the Class members' damages and their increased risk of harm as documented herein.

114.   Plaintiffs and Class members are therefore entitled to the establishment of a medical monitoring program that includes, among other things: (1) Establishing a trust fund, in an amount to

be determined, to pay for the medical monitoring of all Class members; and (2) Notifying all Class members in writing that they may require frequent medical monitoring necessary to diagnose conditions resulting from RF radiation exposure.

**COUNT IV**
**NEGLIGENCE AGAINST SAMSUNG**

115.  The Samsung Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here.

116.  Samsung owed Plaintiffs a duty to exercise reasonable care in selling smartphones that emitted RF radiation at safe levels when placed on or in close proximity to their bodies.

117.  Defendant failed to exercise reasonable care when, after knowingly designing and manufacturing iPhones whose RF exposure exceeded safe limits when used on or in close proximity to the human body, it did not take any measures to warn or protect Plaintiffs and Class members from RF exposure and, instead, covered up any risks by misrepresenting the safety of the smartphones.

118.  Defendant knew or should have known that Plaintiffs and the Class members would foreseeably suffer injury from RF radiation exposure as a result of Defendant's failure to exercise ordinary care.

119.  Defendant's negligence proximately caused Plaintiffs' and the Class members' damages and their increased risk of harm as documented herein.

120.  Plaintiffs and Class members are therefore entitled to the establishment of a medical monitoring program that includes, among other things: (1) Establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of all Class members; and (2) Notifying all Class members in writing that they may require frequent medical monitoring necessary to diagnose conditions resulting from RF radiation exposure.

**COUNT V**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 ET SEQ.) AGAINST APPLE**

121.  The Apple Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

122.  This claim is brought by the Apple Plaintiffs on behalf of the nationwide Apple Class.

123.   California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE § 17200 et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Defendant's conduct, as described herein, was and is in violation of the UCL.

124.   Defendant's conduct violates the UCL in at least the following ways: Defendant failed to disclose that the Affected Phones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

125.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Phones with an intent to mislead Plaintiffs and the Class.

126.   In purchasing or leasing the Affected Phones, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the phones emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels.

127.   Plaintiffs relied upon Defendant's false misrepresentations when purchasing their phones and as a result suffered an injury-in-fact and lost money.

128.   Plaintiffs relied on Defendant's material representations and/or omissions that the Affected iPhones they were purchasing were safe to use and free from defects.

129.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about its the RF radiation exposure from its Affected Phones, because Defendant: (i) possessed exclusive knowledge of the levels of RF radiation exposure emitted from its phones;  and  (ii) misrepresented and/or made incomplete representations concerning the levels of RF radiation exposure when the phones were used or carried on or in close proximity to the body.

130.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their smartphones, and/or their smartphones have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

131.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

132.   Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these smartphones, would not have purchased or leased these smartphones at the prices they paid, and/or would have purchased or leased less expensive alternative cellphones that did not emit RF radiation exposure at unsafe levels.

133.   Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

134.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief as may be appropriate.

## COUNT VI
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 ET SEQ.) AGAINST SAMSUNG

135.   The Samsung Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

136.   This claim is brought by the Samsung Plaintiffs on behalf of the nationwide Samsung Class.

137.   California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE § 17200 et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Defendant's conduct, as described herein, was and is in violation of the UCL.

138.   Defendant's conduct violates the UCL in at least the following ways: Defendant failed to disclose that the Affected Galaxy Phones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

139.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Phones with an intent to mislead Plaintiffs and the Class.

140.   In purchasing or leasing the Affected Phones, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the phones emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels.

141.   Plaintiffs relied upon Defendant's false misrepresentations when purchasing their phones and as a result suffered an injury-in-fact and lost money.

142.   Plaintiffs relied on Defendant's material representations and/or omissions that the Affected Phones they were purchasing were safe to use and free from defects.

143.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about its the RF radiation exposure from its Affected Phones, because Defendant: (i) possessed exclusive knowledge of the levels of RF radiation exposure emitted from its phones;  and  (ii) misrepresented and/or made incomplete representations concerning the levels of RF radiation exposure when the phones were used or carried on or in close proximity to the body.

144.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their smartphones, and/or their smartphones have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

145.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

146.   Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these smartphones, would not have purchased or leased these smartphones at the prices they paid, and/or would have purchased or leased less expensive alternative cellphones that did not emit RF radiation exposure at unsafe levels.

147.   Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

148.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief as may be appropriate.

## COUNT VII
## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE. §§ 1750, ET SEQ.) AGAINST APPLE

149.   The Apple Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

150.   This claim is brought by the Apple Plaintiffs on behalf of the nationwide Apple Class.

151.   Defendant violated the California Consumers Legal Remedies Act (CLRA) in numerous respects. Defendant failed to disclose that the Affected Phones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

152.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Phones with an intent to mislead Plaintiffs and the Class.

153.   In purchasing or leasing the Affected Phones, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the phones emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels.

154.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false and gravely misleading. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

155.   Defendant knew or should have known that its conduct violated the CLRA.

156.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about its the RF radiation exposure from its Affected Phones, because Defendant: (i) possessed exclusive knowledge of the levels of RF radiation exposure emitted from its phones;  and  (ii) misrepresented and/or made

1   incomplete representations concerning the levels of RF radiation exposure when the phones were used

2   or carried on or in close proximity to the body.

3          157.   Plaintiffs and the other Class members relied on Defendant's material representations

4   and/or omissions that the Affected iPhones they were purchasing were safe to use and free from

5   defects.

6          158.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class

7   members.

8          159.   Plaintiffs and the other Class members were injured and suffered ascertainable loss,

9   injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and

10  the other Class members overpaid for their smartphones, and/or their smartphones have suffered a

11  diminution in value. These injuries are the direct and natural consequence of Defendant's

12  misrepresentations and omissions.

13         160.   Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the

14  other Class members to make their purchases or leases of their Affected Phones.

15         161.   Absent those misrepresentations and omissions, Plaintiffs and the other Class members

16  would not have purchased or leased these smartphones, would not have purchased or leased these

17  smartphones at the prices they paid, and/or would have purchased or leased less expensive alternative

18  cellphones that did not emit RF radiation exposure at unsafe levels.

19         162.   Plaintiffs were deceived by Apple's failure to disclose the true nature of its

20  Smartphones.

21         163.   Plaintiffs demand judgment against Defendant under the CLRA for injunctive relief as

22  may be appropriate and an award of attorneys' fees and costs.

23         164.   Plaintiffs have provided Defendant with notice of its violations of the CLRA pursuant to

24  CAL. CIV. CODE § 1782(a). The notice was transmitted to Defendant on August 23, 2019.  If after

25  thirty days of receipt of this letter, Defendant has failed to adequately address the violations alleged

26  herein, Plaintiffs will amend the complaint to add a claim for damages under the CLRA.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VIII

### VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE. §§ 1750, ET SEQ.) AGAINST SAMSUNG

165.   The Samsung Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

166.   This claim is brought by the Samsung Plaintiffs on behalf of the nationwide Samsung Class.

167.   Defendant violated the California Consumers Legal Remedies Act ("CLRA") in numerous respects. Defendant failed to disclose that the Affected Phones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

168.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Phones with an intent to mislead Plaintiffs and the Class.

169.   In purchasing or leasing the Affected Phones, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the phones emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels.

170.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false and gravely misleading. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

171.   Defendant knew or should have known that its conduct violated the CLRA.

172.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about its the RF radiation exposure from its Affected Phones, because Defendant: (i) possessed exclusive knowledge of the levels of RF radiation exposure emitted from its phones;  and  (ii) misrepresented and/or made incomplete representations concerning the levels of RF radiation exposure when the phones were used or carried on or in close proximity to the body.

173. Plaintiffs and the other Class members relied on Defendant's material representations and/or omissions that the Affected Phones they were purchasing were safe to use and free from defects.

174. Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

175. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their smartphones, and/or their smartphones have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

176. Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Phones.

177. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these smartphones, would not have purchased or leased these smartphones at the prices they paid, and/or would have purchased or leased less expensive alternative cellphones that did not emit RF radiation exposure at unsafe levels.

178. Plaintiffs were deceived by Samsung's failure to disclose the true nature of its Smartphones.

179. Plaintiffs demand judgment against Defendant under the CLRA for injunctive relief as may be appropriate and an award of attorneys' fees and costs.

180. Plaintiffs have provided Defendant with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1782(a). The notice was transmitted to Defendant on August 23, 2019. If after thirty days of receipt of this letter, Defendant has failed to adequately address the violations alleged herein, Plaintiffs will amend the complaint to add a claim for damages under the CLRA.

## COUNT IX
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 ET SEQ.) AGAINST APPLE

181. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

182.   This claim is brought by the Apple Plaintiffs on behalf of purchasers who are members of the Apple Class.

183.   CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

184.   Defendant failed to disclose that the that the Affected iPhones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

185.   Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

186.   Defendant has violated § 17500 because the misrepresentations and omissions regarding the functionality, reliability, and safety of the Affected iPhones as set forth in this Complaint were material and likely to deceive a reasonable consumer.

187.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the functionality, reliability, and safety of the Affected iPhones.

188.   Defendant's representations turned out not to be true because the Affected iPhones emit unsafe levels of RF radiation exposure when used or carried on or in close proximity to the body.

189.   Had Plaintiffs and the other Class members known this, they would not have purchased or leased their smartphones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their smartphones.

190.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

191.   Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

192.   The facts concealed and omitted by Defendant to Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected iPhones or pay a lower price. Had Plaintiffs and the other Class members known of the higher RF radiation exposure at the time they purchased or leased their Affected iPhones, they would not have purchased or leased those smartphones, or would have paid substantially less than they did.

193.   Plaintiffs' and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

194.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief as may be appropriate.

**COUNT X**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 ET SEQ.) AGAINST SAMSUNG**

195.   The Samsung Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

196.   This claim is brought by the Samsung Plaintiffs on behalf of the nationwide Samsung Class.

197.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

198.   This claim is brought by the Samsung Plaintiffs on behalf of purchasers who are members of the Samsung Class.

199.   CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

200.   Defendant failed to disclose that the that the Affected Galaxy Phones (i) emitted RF radiation exposure when used or carried on or in close proximity to the human body at unsafe levels; and (ii) that the RF radiation exposure was far worse than a reasonable consumer would expect given the premium paid for these smartphones over a cellphone.

201.   Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

202.   Defendant has violated § 17500 because the misrepresentations and omissions regarding the functionality, reliability, and safety of the Affected Phones as set forth in this Complaint were material and likely to deceive a reasonable consumer.

203.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected Phones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the functionality, reliability, and safety of the Affected Phones.

204.   Defendant's representations turned out not to be true because the Affected Phones emit unsafe levels of RF radiation exposure when used or carried on or in close proximity to the body.

205.   Had Plaintiffs and the other Class members known this, they would not have purchased or leased their smartphones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their smartphones.

206.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

207.   Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

208.   The facts concealed and omitted by Defendant to Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Phones or pay a lower price. Had Plaintiffs and the other Class members known of the higher RF radiation exposure at the time they purchased or leased their Affected Phones, they would not have purchased or leased those smartphones, or would have paid substantially less than they did.

209.   Plaintiffs' and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

210.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief as may be appropriate.

## COUNT XI
## ALTERNATIVE COUNT FOR VIOLATION OF STATE CONSUMER PROTECTTION ACTS AGAINST APPLE

211.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

212.   At all times relevant hereto, Defendant designed, manufactured, produced, marketed and/or sold the Affected iPhones.

213. The Apple Plaintiffs bring this alternative Count against Apple, individually, and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:

a. the Alaska Unfair Trade Practices And Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

b. the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;

c. the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

d. the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. and 17500, et seq.;

e. the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

f. the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq.;

g. the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42- 110, et seq.;

h. the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

i. the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq.;

j. the Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

k. the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, et seq.;

l. the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et seq.;

m. the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, et seq.;

n. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, et seq.;

o. the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

p. the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

q. the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

r. the Louisiana Unfair Trade Practices And Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

s. the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

t. the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, et seq.;

35

CLASS ACTION COMPLAINT

u.   the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, et seq.;

v.   the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

w.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

x.   the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

y.   the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, et seq.;

z.   the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.

aa. the New Hampshire Regulation of Business Practices For Consumer Protection, N.H. Rev. Stat. § 358-A:1, et seq.;

bb. the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

cc. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

dd. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

ee. the North Carolina Unfair And Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

ff.  the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

gg. the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

hh. the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

ii.  the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

jj.  the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

kk. the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

ll.  the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5- 10, et seq.;

mm.   the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

nn. the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

oo. the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

pp. the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

qq. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

rr.  the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

ss.  the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

tt.  the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, et seq.;

uu. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

vv. the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq.

214.   The acts, practices, misrepresentations and omissions by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

215.   Defendant's acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived or damaged Plaintiffs and members of the Class in connection with the sale or advertisement of the Affected iPhones. Defendant's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with  the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged in violation of each of the above-enumerated statutes.

216.   Plaintiffs, on behalf of themselves and the other Class members, seek monetary damages, treble damages and such other and further relief as set forth in each of the above enumerated statutes.

**COUNT XII**
**ALTERNATIVE COUNT FOR VIOLATION OF STATE CONSUMER PROTECTITION ACTS AGAINST SAMSUNG**

217.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

218.   The Samsung Plaintiffs bring this alternative Count against Samsung, individually, and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:

    a.  the Alaska Unfair Trade Practices And Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

    b.  the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;

    c.  the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

    d.  the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. and 17500, et seq.;

    e.  the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

    f.  the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq.;

    g.  the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42- 110, et seq.;

    h.  the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

    i.  the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq.;

    j.  the Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

    k.  the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, et seq.;

    l.  the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et seq.;

    m.  the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, et seq.;

    n.  the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, et seq.;

    o.  the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

    p.  the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

    q.  the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

    r.  the Louisiana Unfair Trade Practices And Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

    s.  the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

    t.  the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, et seq.;

1     u.  the Massachusetts Regulation of Business Practices for Consumers Protection Act,

2          Mass. Gen Laws Ann. Ch. 93A, et seq.;

3     v.  the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

4     w.  the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

5     x.  the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

6     y.  the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, et seq.;

7     z.  the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.

8     aa. the New Hampshire Regulation of Business Practices For Consumer Protection, N.H.

9          Rev. Stat. § 358-A:1, et seq.;

10   bb. the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

11   cc. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

12   dd. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen.

13        Bus. Law § 349, et seq.;

14   ee. the North Carolina Unfair And Deceptive Trade Practices Act, N.C. Gen Stat. § 75-

15        1.1, et seq.;

16   ff. the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

17   gg. the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

18   hh. the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

19   ii.  the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

20   jj.  the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §

21        201-1, et seq.;

22   kk. the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et

23        seq.;

24   ll.  the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5- 10, et seq.;

25   mm.    the South Dakota Deceptive Trade Practices and Consumer Protection, S.D.

26        Codified Laws § 37-24-1, et seq.;

27   nn. the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

28

oo. the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

pp. the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

qq. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

rr.  the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

ss.  the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

tt.  the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, et seq.;

uu. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

vv. the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq.

219.   The acts, practices, misrepresentations and omissions by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

220.   Defendant's acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived or damaged Plaintiffs and members of the Class in connection with the sale or advertisement of the Affected Galaxy Phones. Defendant's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with  the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged in violation of each of the above-enumerated statutes.

221.   Plaintiffs, on behalf of themselves and the other Class members, seek monetary damages, treble damages and such other and further relief as set forth in each of the above enumerated statutes.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT XIII
## UNJUST ENRICHMENT AGAINST APPLE

222.    Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.  The Apple Plaintiffs bring this Count against Apple on behalf of the Apple Class.

223.    At all times relevant hereto, Defendant designed, manufactured, produced, marketed and/or sold the Affected iPhones.

224.    Apple has benefitted from its unlawful acts by receiving payments for the sale of the Affected iPhones.

225.    Plaintiffs and members of the Class conferred upon Defendant, without knowledge that the Affected Phones emitted RF radiation exposure at unsafe levels when used or carried or in close proximity to the human body, benefits that were non-gratuitous.

226.    Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

227.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving product of high quality, nature, fitness or value that had been represented by Defendant and reasonable consumers would have expected.

228.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

229.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

///

///

///

41

CLASS ACTION COMPLAINT

## COUNT XIV
## UNJUST ENRICHMENT AGAINST SAMSUNG

230.   Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.  The Samsung Plaintiffs bring this Count against Samsung on behalf of the Samsung Class.

231.   At all times relevant hereto, Defendant designed, manufactured, produced, marketed and/or sold the Affected Galaxy Phones.

232.   Samsung has benefitted from its unlawful acts by receiving payments for the sale of the Affected Galaxy Phones.

233.   Plaintiffs and members of the Class conferred upon Defendant, without knowledge that the Affected Phones emitted RF radiation exposure at unsafe levels when used or carried or in close proximity to the human body, benefits that were non-gratuitous.

234.   Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

235.   Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving product of high quality, nature, fitness or value that had been represented by Defendant and reasonable consumers would have expected.

236.   Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

237.   Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

## VIII.  **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs and the members of the Classes pray for judgment against Defendants, as follows:

(a)   Certifying the classes and appointing the respective Plaintiffs as Class

Representatives and their counsel as Class Counsel;

(b)   Finding against Defendants on liability;

(c)   Awarding Plaintiffs and the Class the costs of medical monitoring,

damages suffered by Plaintiffs and the Class, restitution to Plaintiffs and the

Class of all monies wrongfully obtained by Defendant;

(d)   Granting appropriate injunctive relief;

(e)   Awarding reasonable attorneys' fees and costs incurred in prosecuting

this action, and

(f)   Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

DATED: August 23, 2019

By:        */s/ Jennie Lee Anderson*
Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:   (415) 986-1400
Facsimile:   (415) 986-1474

Elizabeth A. Fegan (*motion for pro hac vice forthcoming*)
beth@feganscott.com
Timothy A. Scott (*motion for pro hac vice forthcoming*)
tim@feganscott.com
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone:     (312) 741-1019
Facsimile:     (312) 264-0100

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J. Barton Goplerud (*motion for pro hac vice forthcoming*)
goplerud@sagwlaw.com
**SHINDLER, ANDERSON,**
**GOPLERUD & WEESE, P.C.,**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT