Jonathan S. Tam (Bar No. 304143)
DECHERT LLP
One Bush Street
San Francisco, CA  94104-4446
Telephone:  415-262-4518
Facsimile:  415-262-4555
jonathan.tam@dechert.com

Mark S. Cheffo (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  212-698-3814
Facsimile:  212-698-3599
mark.cheffo@dechert.com

Christina Guerola Sarchio (*pro hac vice*)
Amisha R. Patel (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, D.C.  20006-1110
Telephone:  202-261-3300
Facsimile:  202-261-3333
christina.sarchio@dechert.com
amisha.patel@dechert.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW COHEN, TIMOTHY HORNICK, KALEAH C. ALLEN, NICHOLAS CARLSON, GLENN E. JACOBS, MARK WEILER, CHAD SMITH, SARAH D. SMITH, MATT KOPPIN, SCOTT CISCHKE, KRYSTLE FAERYN, RODOLFO CABRERA, BRANDY DAVIS, WILLIAM ZIDE, ZACHARY GOMOLEKOFF, DAVID HEDICKER, NANCY MAEKAWA, CATHERINE GOODWIN, PAUL COLETTI, KATHLEEN BOGGS, KIMBERLY MODESITT, KIMBERLY BENJAMIN, MARK KUNZE, ARIANA RYAN, NATHAN COOPER, BECKY WELLINGTON, M. GAIL SUNDELL, VICTOR PERLMAN, and JUNE A. HALL, individually and on behalf of all others similarly situated, | Case No.: 3:19-CV-05322-WHA <br><br> **NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  February 6, 2020 <br> Time: 2:00 P.M. <br> Judge: Hon. William J. Alsup <br> Courtroom: 12 |
| Plaintiffs, | |
| v. | |
| APPLE, INC. and SAMSUNG ELECTRONIC AMERICA INC., | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 3

    I.      The FCC Regulates Cell Phones and Sets Radiofrequency Emissions Standards ........................................................................................................ 3

    II.     The FCC's Certification Process for Cell Phones .................................... 4

    III.   The FCC Recently Affirmed its RF-Exposure Limits and RF-Testing Standards after Extensive Review .............................................................. 6

    IV.   Plaintiffs' Consolidated Amended Complaint .......................................... 7

STANDARD OF REVIEW ......................................................................................... 9

ARGUMENT ............................................................................................................... 9

    I.      Federal Law Preempts Plaintiffs' Claims ............................................... 9

          A.    Plaintiffs' Collateral Attack on the FCC's Standards Is Preempted ......... 11

          B.    Alternatively, the Primary Jurisdiction Doctrine Precludes Plaintiffs' Claims ........................................................................ 12

    II.     Plaintiffs Lack Constitutional Standing Under Article III ................................ 13

          A.    Plaintiffs' Feigned Increased Risk Of Harm Fails To Constitute An Injury ........................................................................... 14

          B.    Plaintiffs' Alleged Economic Harm Does Not Constitute An Injury. ...... 16

    III.   Plaintiffs Fail To Satisfy Rule 9(b) ...................................................... 17

    IV.   Plaintiffs Fail to Plead Causation or Reliance........................................ 18

    V.     Plaintiffs' Tort Claims are Barred by the Economic Loss Doctrine ................ 19

    VI.   Plaintiffs' Claim for Breach of Implied Warranty Fails ...................................... 22

    VII.  Plaintiffs' Claim for Unjust Enrichment Fails .................................................... 24

1

VIII.   Product Liability Statutes Preclude Certain State Common Law and
Statutory Claims ................................................................................................... 24

2

3

CONCLUSION ........................................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS                                    3:19-CV-05322-WHA

# TABLE OF AUTHORITIES

**CASES**

*A Good Time Rental, LLC v. First Am. Title Agency, Inc.*,
  259 P.3d 534 (Colo. App. 2011) ...............................................................................20

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011)....................................................................................23

*Am. Suzuki Motor Corp. v. Superior Court*,
  44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) ..............................................................23

*Argabright v. Rheem Mfg. Co.*,
  258 F. Supp. 3d 470  (D.N.J. 2017) .........................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................9

*Augustine v. Talking Rain Beverage Co., Inc.*,
  386 F. Supp. 3d 1317 (S.D. Cal. 2019).............................................................. 24-25

*Badillo v. Am. Brands, Inc.*,
  16 P.3d 435 (Nev. 2001)...........................................................................................20

*Bailey v. Wyeth, Inc.*,
  37 A.3d 549 (N.J. Super. Ct. Law. Div. 2008) ........................................................25

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007).............................................................................................9, 23

*Bennett v. T-Mobile USA*,
  597 F. Supp. 2d 1050 (C.D. Cal. 2008)............................................................ *passim*

*Birdsong v. Apple Inc.*,
  2008 WL 7359917 (N.D. Cal. June 13, 2008), .........................................................23

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)........................................................................15, 22, 23

*Bowdoin v. Showell Growers, Inc.*,
  817 F.2d 1543 (11th Cir. 1987)................................................................................22

*Brodsky v. Apple Inc.*,
  2019 WL 4141936 (N.D. Cal. Aug. 30, 2019).........................................................24

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) ...............................................................14, 17

iii

*Cahen v. Toyota Motor Corp.*,
  717 F. App'x 720 (9th Cir. 2017) ...........................................................14

*Caronia v. Philip Morris USA, Inc.*,
  22 N.Y.3d 439 (N.Y. 2013)........................................................................20

*Chapman v. Pier 1 Imps. (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011)......................................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................ 14-15

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008)...............................................................12-13

*Coop. Power Ass'n v. Westinghouse Elec. Corp.*,
  493 N.W.2d 661 (N.D. 1992).....................................................................20

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000)...................................................................................10

*CTIA-The Wireless Ass'n v. City & Cty. of S.F.*,
  827 F. Supp. 2d 1054 (N.D. Cal. 2011) .....................................................12

*CTIA-The Wireless Ass'n v. City of Berkeley*,
  854 F.3d 1105 (9th Cir. 2017)...........................................................4, 5, 12

*CTIA-The Wireless, Ass'n v. City of Berkeley*,
  928 F.3d 832 (9th Cir. 2019)........................................................................4

*DeBoard v. Wyeth, Inc.*,
  28 A.3d 1245 (N.J. Super. Ct. App. Div. 2011)........................................25

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010).............................................................. 9, 17-18

*Farina v. Nokia Inc.*,
  625 F.3d 97 (3d Cir. 2010).........................................................2, 3, 10, 11

*Firstenberg v. Monribot*,
  350 P.3d 1205 (N.M. Ct. App. 2015)......................................................2, 11

*Fontana v. Apple Inc.*,
  321 F. Supp. 3d 850 (M.D. Tenn. 2018)..................................................2, 11

*Free v. Bland*,
  369 U.S. 663 (1962)......................................................................................9

*Gidley v. Allstate Ins. Co.*,
  2009 WL 3199599 (E.D. Pa. Oct. 6, 2009)................................................19

iv

*Gitson v. Trader Joe's Co.*,
    2014 WL 1048640 (N.D. Cal. Mar. 14, 2014).............................................................19

*Graham Constr. Servs., Inc. v. Hammer & Steel Inc.*,
    755 F.3d 611 (8th Cir. 2014)...........................................................................................20

*Hammer v. Vital Pharm., Inc.*,
    2012 WL 1018842 (D.N.J. Mar. 26, 2012).....................................................................23

*Herrington v. Johnson & Johnson Cos*,
    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .................................................................15

*In re Apple Processor Litigation*,
    366 F. Supp. 3d 1103 (N.D. Cal. 2019) ..................................................................... 16-17

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005)..........................................................................................17

*In re: Elk Cross Timbers Decking Mktg.*,
    2015 WL 6467730 (D.N.J. Oct. 26, 2015)................................................................. 19-20

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..........................................................................14

*In re Iphone 4S Consumer Litig.*,
    2014 WL 589388 (N.D. Cal. Feb. 14, 2014)....................................................................18

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................................24

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    2018 WL 1576457 (N.D. Cal. Mar. 30, 2018)................................................................24

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
    Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...............................................................23

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996)...........................................................................................17

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    2018 WL 4030586 (N.D. Ill Aug. 23, 2018)...................................................................25

*Jensen v. Bayer AG*,
    862 N.E.2d 1091 (Ill. App. Ct. 2007) .............................................................................20

*Johnson v. Nissan N. Am., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ..........................................................................14

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) .............................................................................. 19-20

DECHERT LLP
ATTORNEYS AT LAW

v

DEFENDANT APPLE INC.'S MOTION TO DISMISS
3:19-CV-05322-WHA

1

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..............................................................................18

*Krottner v. Starbucks Corp.*,
  2009 WL 7382290 (W.D. Wash. Aug. 14, 2009) .............................................. 20-21

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................................13, 14

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) .........................................................................20

*Manjares v. Taser Int'l, Inc.*,
  2012 WL 5389688 (E.D. Wash. Nov. 2, 2012)........................................................25

*Marcus v. Apple Inc.*,
  2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ......................................................17, 23

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ..................................................................18

*McCormick v. Halliburton Co.*,
  895 F. Supp. 2d 1152 (W.D. Okla. 2012) ..............................................................21

*Mehl v. Canadian Pac. Ry. Ltd.*,
  227 F.R.D. 505 (D.N.D. 2005).............................................................................21

*Metro-North Commuter Railroad Co. v. Buckley*,
  521 U.S. 424, 427 (1997)....................................................................................20

*Minkler v. Apple, Inc.*,
  65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) .............................................................22

*Montana Envt'l. Info. Ctr. v. Stone-Manning*,
  766 F.3d 1184 (9th Cir. 2014)..............................................................................14

*Morgan v. Apple Inc.*,
  2018 WL 2234537 (N.D. Cal. May 16, 2018) .........................................................20

*Murray v. Motorola Inc.*,
  982 A.2d 764 (D.C. 2009).......................................................................... *passim*

*Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*,
  73 F. Supp. 3d 1206 (N.D. Cal. 2014) ..................................................................19

Dechert LLP
Attorneys At Law

vi

*Parker v. Brush Wellman, Inc.*,
   377 F. Supp. 2d 1290 (N.D. Ga. 2005) .................................................................20

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................... 18-19

*Pinney v. Nokia, Inc.*,
   402 F.3d 430 (4th Cir. 2005) ..............................................................................11

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ...............................................................9, 18

*Potter v. Firestone Tire & Rubber Co.*,
   863 P.2d 795 (Cal. 1993) ....................................................................................21

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014) ...............................................................................10

*Richards v. Johnson & Johnson, Inc.*,
   2018 WL 2976002 (N.D.N.Y. June 12, 2018) ......................................................23

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) .....................................................14, 21, 22

*Robbins v. New Cingular Wireless PCS, LLC*,
   854 F.3d 315 (6th Cir. 2017) ........................................................................2, 10, 11

*Robinson v. Avis Rent A Car Sys., Inc.*,
   22 P.3d 818 (Wash. App. Ct. 2001) ....................................................................19

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ...............................................................................18

*Sinclair v. Merck & Co.*,
   948 A.2d 587 (N.J. 2008) ...............................................................................21, 25

*Stanley v. Amalithone*,
   94 A.D.3d 140 (N.Y. App. Div. 2012) .................................................................11

*Sterling v. Ourisman Chevrolet of Bowie Inc.*,
   2015 WL 2213708 (D. Md. May 8, 2015) ............................................................19

*Swearingen v. Yucatan Foods, L.P.*,
   59 F. Supp. 3d 961 (N.D. Cal. 2014) ...................................................................13

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999) .........................................................................21

*U.S. v. Western Pac. R.R. Co.*,
   352 U.S. 59 (1956) ..............................................................................................12

*Vess v. Ciba Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...................................................................................17

*Williamson v. Apple Inc.*,
    2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .......................................................23

**U.S. CONSTITUTION**

U.S. CONST. art. III § 2, cl. 1 .....................................................................................13

**STATUTES**

47 U.S.C. § 332(c)(7)(B)(iv)..........................................................................................3

Cal. Civ. Code § 1791.1(c) ..................................................................................... 23-24

N.J. Stat. Ann. § 56:8, *et seq*.......................................................................................25

N.J. Stat. Ann. § 2A:58C-1(b)(3)................................................................................25

Wyo. Stat. Ann. § 40-12-108 .......................................................................................19

**OTHER AUTHORITIES**

47 C.F.R. § 2.1093(d)(2)................................................................................................4

47 C.F.R. § 2.939 ...........................................................................................................6

47 C.F.R. § 2.945 ....................................................................................................... 7-8

Fed. R. Civ. P. 9(b) ......................................................................................................17

Fed. R. Civ. P. 12(b)(1)........................................................................................ 13-14

Fed. R. Civ. P. 12(b)(6)................................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECHERT LLP
ATTORNEYS AT LAW

1

**NOTICE OF MOTION AND MOTION**

2      NOTICE IS HEREBY GIVEN THAT, on February 6, 2020, at 2:00 p.m., before the

3  Honorable William H. Alsup in Courtroom 12 of the United States District Court for the Northern

4  District of California in the San Francisco Courthouse, Nineteenth Floor, 450 Golden Gate Avenue,

5  San Francisco, California, Defendant Apple Inc. ("Apple") will and does move this Court for an

6  order granting its Motion to Dismiss.

7      This motion is based on this Notice of Motion, the following Memorandum of Points and

8  Authorities, documents Apple requests the Court take judicial notice of, the argument of counsel,

9  all pleadings, records and papers on file, and such other matters that may be presented to the Court.

10

**MEMORANDUM OF POINTS AND AUTHORITIES**

11

**INTRODUCTION**[1]

12      No appeal to fear and myth can overcome more than 20 years of scientific study and

13  uncontroverted evidence that cell phones certified by the Federal Communications Commission

14  (FCC)—the expert U.S. agency charged with balancing the demand for technology with the need

15  for safety—do not cause cancer.  Indeed, the FCC recently reiterated that "***no scientific evidence***

16  ***establishes a causal link between wireless device use and cancer or other illnesses***"[2] and declined

17  to adjust its cell phone certification standards.[3]  The FCC reached this decision after an expansive

18  years-long inquiry into its existing standards and consultation with experts all over the world,

19  including sister agencies such as the Environmental Protection Agency (EPA), the Food and Drug

20  Administration (FDA), the National Institute for Occupational Safety and Health (NIOSH), and the

21  Occupational Safety and Health Administration (OSHA).

22      Plaintiffs filed this suit on the heels of an article by the *Chicago Tribune* that claimed certain

23  models of Apple's iPhones, when tested at distances closer than what the FCC mandates, show

24

---

25  [1] The Court is directed to Apple's Request for Judicial Notice and accompanying Declaration of
   Jonathan S. Tam in Support of Apple's Motion to Dismiss, filed concurrently herewith, for true and

26  correct copies of cited exhibits ("RJN Exs.").

27  [2] *See* FCC 19-126, Resolution of Notice of Inquiry, Second Report & Order, Notice of Proposed
   Rulemaking, & Mem. Op. & Order ¶ 12 & n.43 (Dec. 4, 2019) (emphasis added) ("FCC 2019
   Resolution") (RJN Ex. 1).

28  [3] RJN Ex. 1 (FCC 2019 Resolution ¶ 14).

radiofrequency (RF) emissions greater than the FCC's limits, but amended their complaint *after* the FCC published its recent 2019 Resolution.  Nevertheless, Plaintiffs assert that as a result of Apple's alleged violation of the FCC's limits, they are now at greater risk for developing cancer and other problems.  Thirty-two plaintiffs from 19 states therefore bring claims under every state's consumer protection and other state laws alleging that Apple misrepresented the safety of its iPhones and misled them about the risk of cancer, and that they paid more than they would have had they understood these risks.

The FCC, however, certified each and every iPhone model the *Tribune* tested.  Thus, when questions arose about whether the iPhones were in compliance with its standards, the FCC exercised its enforcement authority and investigated the models at issue.  On December 10, 2019, after testing the iPhone models themselves, the FCC published a report confirming that Apple and its devices complied with all applicable FCC regulations.[4]  Plaintiffs' claims fail for multiple and independent reasons:

*First*, federal law preempts Plaintiffs' claims.  Apple's iPhones are subject to significant federal government oversight, as each iPhone model must be certified by the FCC before it can be sold in the United States.  Thus, as courts throughout the country have repeatedly held, challenges to the safety of an FCC-certified phone must be rejected on obstacle preemption grounds.[5]

*Second*, Plaintiffs lack Article III standing because they have not sustained an actual injury, their hypothetical risk of injury has been debunked by the U.S. agencies charged with protecting human health, and courts do not recognize theories of "perceived" economic harm.

*Third*, while Plaintiffs assert for each count that Apple misled and deceived them, they do not plead claims with the particularity required by Rule 9(b).  Specifically, the Complaint does not identify what supposed misrepresentations Plaintiffs saw, where or when they saw them, why they

---

[4] FCC, *Results of Tests on Cell Phone RF Exposure Compliance* at 3, 9 (Dec. 10, 2019) ("FCC 2019 Results") (RJN Ex. 2).
[5] *See, e.g.*, *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315 (6th Cir. 2017); *Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010); *Murray v. Motorola Inc.*, 982 A.2d 764 (D.C. 2009); *Bennett v. T-Mobile USA*, 597 F. Supp. 2d 1050 (C.D. Cal. 2008); *Fontana v. Apple Inc.*, 321 F. Supp. 3d 850, 852 (M.D. Tenn. 2018); *Firstenberg v. Monribot*, 350 P.3d 1205, 1216 (N.M. Ct. App. 2015).

2

are false, or how any supposed representation or omission caused them to purchase iPhones.

**Fourth**, Plaintiffs fail to state a claim under any state's consumer protection laws because they fail to plausibly allege causation, reasonable reliance, or any actionable material misrepresentation or omission. Again, Plaintiffs do *not* allege exposure to any specific advertising, let alone reasonable reliance on such advertising or any other of Apple's statements. For similar reasons, Plaintiffs fail to plead essential elements of negligent misrepresentation and unjust enrichment.

**Fifth**, Plaintiffs' breach of implied warranty of merchantability claim also fails. In its Hardware warranty, Apple conspicuously disclaims the implied warranty of merchantability. In any event, Plaintiffs do not plausibly allege any facts showing a breach.

**Sixth**, Plaintiffs' stand-alone claim for unjust enrichment is not a separate cause of action nor do Plaintiffs sufficiently allege false or misleading labeling.

**Finally**, Product Liability Acts in certain states preclude Plaintiffs' state common law and statutory claims.

For each of these reasons, the Court should dismiss Plaintiffs' claims.

## BACKGROUND

### I. THE FCC REGULATES CELL PHONES AND SETS RADIOFREQUENCY EMISSIONS STANDARDS

Congress and the FCC have long regulated the telecommunications industry generally, and RF emissions[6] from cell phones specifically. *Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1052 (C.D. Cal. 2008). In 1996, Congress directed the FCC to "prescribe and make effective rules regarding the environmental effects of radio frequency emissions" and "set standards for RF emissions." 47 U.S.C. § 332(c)(7)(B)(iv).[7] After considering criteria developed by expert organizations, including the Institute of Electrical and Electronics Engineers and the National Council on Radiation Protection and Measurements, as well as input from the EPA, FDA, NIOSH,

---

[6] Cell phones function by transmitting information from its low-powered radio transmitter to a base station, usually a tower with a large antenna. *Farina*, 625 F.3d at 104. During this transmission, cell phones emit low levels of RF energy. *Id.*

[7] RJN Ex. 1 (FCC 2019 Resolution ¶ 6 & n.5).

DECHERT LLP
ATTORNEYS AT LAW

DEFENDANT APPLE INC.'S MOTION TO DISMISS                    3:19-CV-05322-WHA

1    and OSHA, the FCC promulgated guidelines for cell phones that struck a balance between making

2    available to the public new technologies while minimizing their risk of exposure to RF energy.[8]

3    The FCC's RF emissions guidelines thus reflect the "consensus view of the federal agencies

4    responsible for matters relating to the public safety and health."[9]

5         The FCC's current guidelines for RF emissions from cell phones limit the Specific

6    Absorption Rate (SAR)—a measure of the amount of RF energy absorbed by the body[10]—to 1.6

7    watts per kilogram (W/kg) of RF energy, as averaged over one gram of tissue (but for extremities

8    such as hands and pinnae, the SAR limit is greater).  47 C.F.R. § 2.1093(d)(2).[11]  The FCC has long

9    recognized that a value *50 times greater* than SAR 1.6 W/kg is the lowest level that *could even*

10   *potentially* heat human tissue to a level that could cause adverse health effects.[12]  Indeed, the Ninth

11   Circuit[13] has acknowledged that the FCC's RF exposure limits "are set with a large safety margin,

12   well below the threshold for unacceptable rises in human tissue temperature."[14]  Moreover, as the

13   FCC recently reaffirmed just last month, RF exposure levels in excess of FCC limits "would still

14   be *well below* levels considered to be dangerous, and therefore phones legally sold in the United

15   States pose *no health risks*."[15]

16   **II.     THE FCC'S CERTIFICATION PROCESS FOR CELL PHONES**

17

---

18   [8] FCC 97-303, Second Mem. Op. & Order and Notice of Proposed Rulemaking, *In re Guidelines for Evaluating the Environmental Effects*, ¶ 37 (Aug. 25, 1997) ("FCC 1997 Second Mem. Op. & Order") (RJN Ex. 11); FCC, *Wireless Devices and Health Concerns* (Oct. 15, 2019) (RJN Ex. 3); *see also Murray*, 982 A.2d at 775.

19

20   [9] *See* FCC 96-326, Report & Order, *In re Guidelines for Evaluating the Environmental Effects of Radio-frequency Radiation*, at 2 (Aug. 1, 1996) (RJN Ex. 12).

21   [10] RJN Ex. 3 (FCC, *Wireless Devices and Health Concerns*).

22   [11] *See also* RJN Ex. 3 (FCC, *Wireless Devices and Health Concerns*); Pls.' First Am. Consolidated Class Action Compl. ("CAC") ¶ 92.

23   [12] FDA, News Release, Statement from Jeffrey Shuren, M.D., J.D., Director of the FDA's Center for Devices and Radiological Health on the Recent National Toxicology Program Draft Report on Radiofrequency Energy Exposure (Feb. 2, 2018) (RJN Ex. 4).

24

25   [13] *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1112-13 (9th Cir. 2017), *judgment vacated on other on other grounds*, 138 S. Ct. 2708 (2018); *CTIA-The Wireless, Ass'n v. City of Berkeley*, 928 F.3d 832, 853-54 (9th Cir. 2019) ("The FCC guidelines make clear that they are designed to incorporate a many-fold safety factor, such that exposure to radiation in excess of the guideline level is considered by the FCC to be safe.") (Friedland, J., dissenting).

26

27

28   [14] RJN Ex. 1 (FCC 2019 Resolution ¶ 14).

[15] *Id.* (emphasis added).

DECHERT LLP
ATTORNEYS AT LAW

1        The FCC has certified every iPhone model sold in the United States, including every iPhone

2    model at issue in this case.[16]   The FCC requires each cell phone model to comply with its

3    certification process before going to market,[17] which includes submitting results of tests of phones

4    against the head and at a separation distance of up to 25 mm (about one inch) from the body.[18]  The

5    testing process is highly technical, and requires a detailed understanding of the particular cell

6    phone's information, most of which "is non-public and proprietary."[19]  The FCC also mandates that

7    these tests apply *maximum power usage*, which "means that testing is performed under more

8    extreme conditions than a user would normally encounter, so any potential dangers at zero-space

9    [between the device and the user] would be mitigated."[20]

10        The FCC also requires that cell phone manufacturers include in their user manuals specific

11   information that alerts users to the minimum distances appropriate for the device they are using.[21]

12   *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1113 (9th Cir. 2017), *judgment*

13   *vacated on other grounds* 138 S. Ct. 2708 (2018).  Compliance with this disclosure requirement is

14   a prerequisite for FCC certification.[22]  *CTIA*, 854 F.3d at 1113.

15        Once the testing and other required documentation is submitted to the FCC for review, if

16   approved and certified, that cell phone model is deemed by the FCC as "safe for use by the general

---

[16] Apple's Request for Judicial Notice, filed concurrently herewith, include publicly available sample FCC Grants of Authorization for iPhones challenged in this case, including an iPhone 7 model such as that owned by Paul Coletti (RJN Ex. 5), an iPhone 7 Plus model such as that owned by David Hedicker (RJN Ex. 6), and an iPhone 8 model such as that owned by Mark Weiler (RJN Ex. 7).  Grants of Authorization for all iPhones sold in the United States are available on the FCC's website and accessible to the public.

[17] RJN Ex. 3 (FCC, *Wireless Devices and Health Concerns*); *see also Murray*, 982 A.2d at 775-76.

[18] FCC Office of Engineering & Technology, Knowledge Database (KDB) No. 447498: RF Exposure Procedures and Equipment Authorization Policies for Mobile and Portable Devices § 4.2.2(c) (Oct. 23, 2015) ("General RF Exposure Guidelines") (RJN Ex. 8); CAC ¶ 94; RJN Ex. 1 (FCC 2019 Resolution ¶ 14); FCC, *Specific Absorption Rate (SAR) For Cell Phones: What It Means For You* (RJN Ex. 9).

[19] RJN Ex. 2 (FCC 2019 Results at 3).

[20] RJN Ex. 1 (FCC 2019 Resolution ¶ 14); RJN Ex. 9 (FCC, *Specific Absorption Rate (SAR) For Cell Phones: What It Means For You*) ("The FCC requires that cell phone manufacturers conduct their SAR testing to include the most severe, worst-case (and highest power) operating conditions for all the frequency bands used in the USA for that cell phone").

[21] RJN Ex. 8 (FCC KDB, No. 447498, *General RF Exposure Guidelines*, § 4.2.2(d)).

[22] *Id.* § 1.

DECHERT LLP
ATTORNEYS AT LAW

DEFENDANT APPLE INC.'S MOTION TO DISMISS         3:19-CV-05322-WHA

1   public." *Murray*, 982 A.2d at 778.  If a certified phone is later alleged to be in violation of the

2   FCC's requirements, the FCC can investigate, as it did here.   The FCC can also withdraw

3   certification (which means that cell phone model can no longer be sold in the United States), bring

4   an enforcement action, and take other appropriate measures to remedy non-compliance.[23]

5   **III.    THE FCC RECENTLY AFFIRMED ITS RF-EXPOSURE LIMITS AND RF-
         TESTING STANDARDS AFTER EXTENSIVE REVIEW**

6

7            In 2013, the FCC issued a Notice of Inquiry seeking comment on whether its RF testing

8   standards and exposure limits should be modified in light of changes in cell phone technology and

9   usage patterns.[24]  On December 4, 2019—after reviewing more than 1,000 comments, from 564

10  commenting agencies and experts,[25] and discussing with other federal agencies, particularly the

11  FDA—the FCC declined to modify its RF testing and exposure limits, and instead reaffirmed them

12  as the appropriate measure.  The FCC explained it "t[ook] to heart" the FDA's findings that "the

13  weight of the scientific evidence has not linked cell phones to any health problems."[26]  Specifically,

14  the FCC observed that "no expert health agency expressed concern about the Commission's RF

15  exposure limits."[27]   The FCC concluded that "**no scientific evidence establishes a causal link**

16  **between wireless device use and cancer or other illnesses**."[28]

17           In conducting this years-long review, the FCC explicitly considered—and rejected—the

18  two primary studies cited by Plaintiffs in their Complaint to allege risk of harm:  animal studies

19  conducted on rats by the National Toxicology Program and the Ramazzini Institute.[29]  Relying on

20  the FDA's finding that these rat studies could not be extrapolated to humans, the FCC concluded

21

22  [23] *See, e.g.*, 47 C.F.R. § 2.939 (FCC may revoke an equipment authorization if warranted); RJN
    Ex. 3 (FCC, *Wireless Devices and Health Concerns*); RJN Ex. 2 (FCC 2019 Results at 3) ("The

23  FCC takes claims of non-compliance with its regulations seriously and commenced its own testing
    program of the implicated handsets to determine if those handsets comply with the FCC rules…").

24  [24] FCC 13-39, First Report & Order Further Notice of Proposed Rule Making and Notice of inquiry
    (RJN Ex. 10).

25  [25] RJN Ex. 1 (FCC 2019 Resolution, App'x E (List of Commenters to 2013 RF Order and Further
    Notice)).

26  [26] RJN Ex. 1 (FCC 2019 Resolution ¶ 2).

27  [27] *Id.* ¶ 10.

28  [28] *Id.* ¶ 12 (emphasis added).
    [29] *Id.* ¶ 11 n.33; CAC ¶¶ 85-90.

DECHERT LLP
ATTORNEYS AT LAW

DEFENDANT APPLE INC.'S MOTION TO DISMISS                                    3:19-CV-05322-WHA

that "taking into account all scientific evidence we have received, we have not found sufficient evidence that there are adverse health effects in humans caused by exposures at or under the current radiofrequency energy exposure limits."[30]  Thus, the FCC decided that the existing limits "reflect the best available information concerning safe levels of RF exposure for workers and members of the general public, including inputs from our sister federal agencies charged with regulating safety and health from well-established international standards."[31]

At bottom, the FCC's current SAR limits reflect a "a proper balance between the need to protect the public and workers from excessive RF electromagnetic fields and the requirement that [the] industry be allowed to provide telecommunications services to the public in the most efficient and practical manner possible."[32]  The FCC 2019 Resolution is unequivocal that FCC-certified phones, including the iPhones at issue in the CAC, pose no health risks and that "any claim as to the adequacy of the FCC required testing, certification, and authorization regime is no different than a challenge to the adequacy of the RF exposure limits themselves.  This is because both types of claims would undermine the FCC's substantive policy determinations."[33]

## IV.   PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Just two days after the *Tribune* published an article regarding testing of Apple and Samsung phones, Plaintiffs filed this action, which was later amended in the CAC.  The CAC claims that the *Tribune* and Plaintiffs' own testing—conducted by the same lab—show that iPhones exceed RF-emissions limits mandated by the FCC.  CAC ¶¶ 124-25, 141-47.  It claims that Apple "intentionally misrepresented the safety of the iPhones, assuring Class Members that the iPhones had been adequately tested and were safe to use on and in close proximity to their bodies ... despite knowing that the RF radiation exposure exceeded federal limits when used in this matter and was linked to cancer and other health risks."  *Id.* ¶ 178.

In response to the *Tribune*, the FCC undertook its own investigation of the subject phones.  The FCC, pursuant to 47 C.F.R. § 2.945, tested sample phones, and concluded the phones met RF

---

[30] RJN Ex. 1 (FCC 2019 Resolution ¶ 11 n.33 (citation omitted)).
[31] *Id.* ¶ 2.
[32] RJN Ex. 11 (FCC 1997 Second Mem. Op. & Order ¶ 2).
[33] RJN Ex. 1 (FCC 2019 Resolution ¶ 14 n.49).

7

emissions limits, and thus had not violated any FCC rules.[34]

In the face of these findings, however, Plaintiffs refuse to call off their case. Thirty-two of the CAC's plaintiffs from 19 different jurisdictions[35] bring suit against Apple, claiming negligence, negligent misrepresentation, violation of three California consumer protection statutes (Unfair Competition, False Advertising, and Consumers Legal Remedies Act), consumer protection statutes for all fifty states and D.C., unjust enrichment, and breach of implied warranty of merchantability. Plaintiffs seek to represent a sweeping class of all iPhone users, *id.* ¶ 160, although only certain iPhone models were tested (iPhones 7+, 8, X, and XR). *Id.* ¶¶ 124-25, 144-46.

The CAC suggests that "[n]umerous recent scientific publications" show the negative health effects of RF radiation exposure. *Id.* ¶ 9. Plaintiffs contend that they "would not have purchased and/or would not have paid as much" for their respective phones, which include iPhone models 4, 5, 6s, 7, 7+, 8, 8+, X, and XR, had they "understood the risk of radiation exposure from the phone." *Id.* ¶¶ 24-29, 32-33, 35-43, 45-52. Although each Plaintiff asserts that s/he "regularly carries and uses the phone on or near [his or] her body," *id.*, no plaintiff alleges they stopped using their iPhone or limited its use after learning of the alleged "risks." Notably, none claim actual harm, bodily injury, or a plausibly alleged increased personal exposure from RF radiation. Plaintiffs nonetheless seek medical monitoring and monetary damages, among other relief.

The FCC considered and rejected the studies and other information the CAC identifies to suggest a causal connection between cell phones and cancer.[36] And while Plaintiffs indicate that the World Health Organization's International Agency for Research on Cancer (IARC) in 2011 classified RF radiation from wireless devices as "possibly carcinogenic to human," the FCC considered information from IARC but did not find that the data demonstrated a causal relationship.[37]

---

[34] RJN Ex. 2 (FCC 2019 Results at 3, 9).

[35] The named plaintiffs asserting claims against Apple hail from Arizona, California, Colorado, Florida, Georgia, Illinois, Iowa, Maryland, Minnesota, Missouri, Nevada, New Jersey, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, Washington, and Wyoming. CAC ¶¶ 24-29, 32-43, 45-52.

[36] RJN Ex. 1 (FCC 2019 Resolution ¶ 11 n.33).

[37] *Id.* ¶ 153.

DECHERT LLP
ATTORNEYS AT LAW

The CAC also points to Apple's FCC-mandated RF exposure disclaimers in the Legal section of its website for the iPhone 4, 4s and 5, and contends that Apple suggested in its application to the FCC for the iPhone 7 that users carry the device at least 5 millimeters from the body.  CAC ¶¶ 96-98.  The CAC also takes issue with iPhone commercials that show users holding iPhones close to their person, *id.* ¶¶ 69-70, and Apple's general "theme of keeping the iPhone in your pocket," *id.* ¶¶ 63-66.  The CAC, however, does not expressly allege that any named plaintiff saw or heard any of these specific representations or statements.

## STANDARD OF REVIEW

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable.  *Iqbal*, 556 U.S. at 678.  A complaint must transcend the "speculative" and "conceivable," and provide more than mere legal conclusions.  *Twombly*, 550 U.S. at 555, 570.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Where, as here, a plaintiff's claims sound in fraud, they are also subject to Rule 9(b)'s heightened pleading standards, which require that the claims pled with "particularity," including "the who, what, when, where, and how of the misconduct charged."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation marks and citation omitted).  If a "claim relies entirely on a fraudulent course of conduct ... the claim is said to be 'grounded in fraud' ... and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b)."  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (quotation marks, brackets, and citation omitted).  This is true "[r]egardless of whether fraud is an essential element of [the] claim."  *Id.*

## ARGUMENT

## I.    FEDERAL LAW PREEMPTS PLAINTIFFS' CLAIMS

The Supremacy Clause of the U.S. Constitution invalidates a state law that "interferes with or is contrary to federal law."  *Free v. Bland*, 369 U.S. 663, 666 (1962).  Generally, federal law can preempt state law in three ways:  express preemption, field preemption, and conflict preemption.

1    Conflict preemption takes two forms:  (1) impossibility preemption, where "it is impossible for a

2    private party to comply with both state and federal law," and (2) obstacle preemption, "where

3    'under the circumstances of [a] particular case, [the state law] stands as an obstacle to the

4    accomplishment and execution of the full purposes and objectives of Congress.'"  *Crosby v. Nat'l*

5    *Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citation omitted).[38]

6         In cases where plaintiffs challenge an FCC-certified phone's safety, courts have applied

7    obstacle preemption to dismiss those claims.  *See Bennett,* 597 F. Supp. 2d at 1053; *Farina*, 625

8    F.3d at 126; *see also Robbins*, 854 F.3d at 319-20.  In *Farina v. Nokia Inc.*, the plaintiff claimed it

9    was unsafe to use cell phones without headsets because holding the phone next to the head exposes

10   users to dangerous amounts of RF radiation.  625 F.3d at 104.  The plaintiff alleged that the cell

11   phone manufacturer's marketing of cell phones as safe violated Pennsylvania law.  *Id.*  Affirming

12   dismissal of the complaint, the Third Circuit held plaintiff's claims were "preempted by the FCC's

13   RF regulations" because "[a] jury determination that cell phones in compliance with the FCC's SAR

14   guidelines were still unreasonably dangerous would, in essence, permit a jury to second guess the

15   FCC's conclusion on how to balance its objectives." *Id.* at 125.  The Third Circuit explained that

16   "[t]he FCC is in a better position to monitor and assess the science behind RF radiation than juries

17   in individual cases." *Id.*  The FCC itself agreed.  *See* Br. for the United States as Amici Curiae,

18   *Farina v. Nokia, Inc.*, 565 U.S. 928 (2011) (No. 10-1064), 2011 WL 3799082.

19        Similarly, in *Robbins v. New Cingular Wireless PCS*, Kentucky residents sued to prevent

20   construction of a cellphone tower near their homes based on their concern that RF emissions from

21   the tower might cause them future personal injuries.  854 F.3d at 318.  The Sixth Circuit affirmed

22   the dismissal of the complaint on preemption grounds, reasoning that to allow RF-emissions-based

23   tort suits would "shift the power to regulate RF emissions away from the FCC and into the hands

24   of courts and state governments," a result that would be inconsistent with the delegation of authority

25   by Congress to the FCC to establish uniform RF exposure standards.  *Id.* at 320.

26

27   ---
     [38] Where a state law claim is preempted by federal law, the Ninth Circuit has repeatedly affirmed
     dismissals under Rule 12(b)(6).  *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754

28   F.3d 754, 762 (9th Cir. 2014) (collecting cases).

And in *Murray v. Motorola, Inc.*, the D.C. Court of Appeals found that "plaintiffs' claims that are premised upon allegations that defendants' FCC-certified cell phone are unreasonably 'dangerous' because of RF radiation are barred under the doctrine of conflict preemption." 982 A.2d at 789.[39]  Other decisions are in accord.  *See Bennett*, 597 F. Supp. 2d at 1052-53 (claim for failing to warn of RF levels preempted); *Fontana*, 321 F. Supp. 3d at 852 (claim for failing to warn that cell phone radiation is possibly carcinogenic to humans preempted); *Stanley v. Amalithone*, 94 A.D.3d 140, 146 (N.Y. App. Div. 2012) (preempted claims of apartment residents seeking removal of a cell phone tower from a nearby rooftop based on allegations that the tower's RF emissions were dangerous); *Firstenberg*, 350 P.3d at 1216 (homeowner's claims alleging injury from RF emissions from his neighbor's cell phone preempted).[40]

### A.    Plaintiffs' Collateral Attack on the FCC's Standards Is Preempted

Plaintiffs concede—just as the FCC concluded in its December 10, 2019 report after testing various iPhone models[41]—that their iPhones comply with FCC regulations.  *See, e.g.*, CAC ¶ 8 ("[E]very one of these cell phones 'passed' laboratory radiation SAR tests.  These phones are legally considered compliant.").[42]  Plaintiffs also do not cite any tests showing that iPhones exceed federal limits at the FCC's measurements.  Instead, Plaintiffs and the *Tribune* tested at 5, 2, and 0 mm—far shorter than the 25 mm distance the FCC requires for certification.  *Id.* ¶¶ 121-25, 141-46.  Plaintiffs use these, rather that the FCC's limits, because they contend that their distances better account for the way in which people actually use their cell phones.  *E.g., id.* ¶¶ 8, 103.  Plaintiffs

---

[39] *Murray*, however, allowed claims concerning pre-1996 cell phones, as well as certain claims under D.C.'s consumer protection act, to proceed, thought it explicitly qualified that it was not holding that "any and all [consumer protection] claims ... may be read ... to survive the preemption challenge." *Murray*, 982 A.2d at 784 & n.35.  Insofar as *Murray* held that certain claims were not preempted by federal law, it is contrary to better reasoned authority from other federal appellate courts.  *Farina*, 625 F.3d at 126; *Robbins*, 854 F.3d at 319-20.

[40] The outlier is *Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005), decided before the FCC made clear its view that tort cases challenging the safety of FCC-certified phones are preempted, and has been roundly criticized as unpersuasive.  *See, e.g., Farina*, 625 F.3d at 132-34; *Murray*, 982 A.2d at 777 n.19; *Fontana*, 321 F. Supp. 3d at 855; *Firstenberg*, 350 P.3d at 1216.

[41] RJN Ex. 2 (FCC 2019 Results at 3, 9).

[42] Obstacle preemption is triggered by the FCC's regulation of and enforcement authority over RF emissions from cell phones irrespective of the FCC's testing results.

DECHERT LLP
ATTORNEYS AT LAW

DEFENDANT APPLE INC.'S MOTION TO DISMISS                    3:19-CV-05322-WHA

1   argue that when these phones are placed closer to the body than what the FCC prescribes, the RF

2   emissions are higher, therefore posing a greater risk of harm than what Apple allegedly represents

3   in its advertisements.  Plaintiffs also contend that Apple failed to accurately disclose the alleged

4   risks of RF radiation exposure when used in this closer proximity (*id.* ¶ 151), notwithstanding that

5   Apple complies with federally mandated disclosure obligations.[43]

6        Plaintiffs not only ignore the FCC's careful undertaking to balance the demands for

7   telecommunications with health and safety in setting the standards for certification in the first

8   instance and the 50-fold safety margin the FCC builds into the SAR limit,[44] they wholly neglect to

9   address the fact that just before they filed their CAC, the FCC rejected the more restrictive testing

10  requirements Plaintiffs now try to impose through litigation.  *See* RJN Ex. 1 (FCC 2019 Resolution

11  ¶¶ 11, 14).  The FCC explicitly considered and rejected the scientific studies that Plaintiffs cite here

12  and concluded that "no scientific evidence establishes a causal link between wireless device use

13  and cancer or other illnesses."  RJN Ex. 1 (FCC 2019 Resolution ¶ 12).  Thus, to allow Plaintiffs'

14  claims to proceed with this lawsuit in the face of the FCC's recent pronouncement would allow

15  Plaintiffs to "collateral[ly] attack" the FCC's judgment on RF emission standards, which would

16  violate the Supremacy Clause.  *Bennett*, 597 F. Supp. 2d at 1053.

17        **B.**    **Alternatively, the Primary Jurisdiction Doctrine Precludes Plaintiffs' Claims**

18        The primary jurisdiction doctrine "is concerned with promoting proper relationships

19  between the courts and administrative agencies charged with particular regulatory duties."  *U.S. v.*

20  *Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956).  Although "no fixed formula exists for applying the

21  doctrine of primary jurisdiction," *id.* at 64, courts can invoke the doctrine for "(1) the need to resolve

22  an issue that (2) has been placed by Congress within the jurisdiction of an administrative body

23

24  [43] The FCC requires that cell phone manufacturers inform consumers "of minimum test separation
25  distance requirements" and must "clearly disclose[]" accessory operating configurations "though
    conspicuous instructions in the user guide and user manual, to ensure unsupported operations are
26  avoided."  *CTIA*, 854 F.3d at 1122-23.  This is what Apple did and continues to do.
27  [44] As this Court recognized, "[t]he FCC set a conservative standard, one weighted heavily in favor
    of minimizing any public health hazard."  *CTIA-The Wireless Ass'n v. City & Cty. of S.F.*, 827 F.
    Supp. 2d 1054, 1064 (N.D. Cal. 2011) (Alsup, J.), *aff'd*, 494 F. App'x 752 (9th Cir. 2012); *see also*
28  RJN Ex. 1 (FCC 2019 Resolution ¶ 14) (recognizing safety margin built into FCC SAR limit).

DECHERT LLP
ATTORNEYS AT LAW

DEFENDANT APPLE INC.'S MOTION TO DISMISS                3:19-CV-05322-WHA

having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).

The FCC not only has the requisite expertise to examine purported violations of regulations related to RF emissions, but given that the FCC has now reviewed and debunked the concerns raised by the *Tribune*,[45] for the Court to permit this litigation to go forward jeopardizes "uniformity in administration." *Clark*, 523 F.3d at 1115. If Plaintiffs continue to argue that RF emission levels from iPhones pose unacceptable risks or that Apple's user manual disclosures, issued pursuant to FCC guidelines, on how to avoid excessive RF exposure are inadequate, the more sensible approach is for the Court to defer to the agency that Congress charged with overseeing the "particularly complicated issue" of balancing promoting a robust national telecommunications infrastructure with the need for health and safety. *See id.* at 1114. Accordingly, to the extent the Court does not find the CAC claims preempted, the Court should dismiss Plaintiffs' claims under the primary jurisdiction doctrine. *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 963 (N.D. Cal. 2014) (granting dismissal in light of FDA's announcement it would actively consider issues presented to the court).

## II.     PLAINTIFFS LACK CONSTITUTIONAL STANDING UNDER ARTICLE III

Article III standing is a fundamental jurisdictional requirement that defines and limits a court's power to resolve cases or controversies. To establish this threshold requirement, Plaintiffs must allege an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citation omitted); U.S. Const. art. III § 2, cl. 1. Although Plaintiffs need not necessarily "demonstrate that it is literally certain that the harms they identify will come about," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013), the "threatened injury must be *certainly impending* to constitute an injury in fact" and "allegations of *possible* future injury are not sufficient," *id.* at 409 (citation omitted).[46] Here, because Plaintiffs lack standing, all of their claims

---

[45] RJN Ex. 1 (FCC 2019 Resolution ¶ 10).

[46] Because Plaintiffs fail to plead an injury-in-fact, the Court need not address the other standing

1    should be dismissed pursuant to Rule 12(b)(1).[47]

2          **A.      Plaintiffs' Feigned Increased Risk Of Harm Fails To Constitute An Injury**

3          As Plaintiffs do not argue actual injury, Plaintiffs' claim of future injury requires a risk that

4    "is both credible and substantial." *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 (N.D. Cal.

5    2015).  "The requirement that a threat of harm be credible is not an empty one, especially in light

6    of *Clapper*'s requirement that the threat be 'certainly impending.'"  *Cahen v. Toyota Motor Corp.*,

7    147 F. Supp. 3d 955, 969 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017).

8          For example, in *Riva*, Pepsi argued that plaintiffs lacked standing to pursue their claims that

9    Pepsi contained an alleged carcinogen.  82 F. Supp. 3d at 1050-51.  The court agreed because

10   plaintiffs' alleged risk of cancer amounted to speculation and lacked credibility.  *Id.* at 1053.

11   Although plaintiffs cited studies that reported an increased risk of harm to mice exposed to the

12   alleged carcinogen, they did not allege "facts to show that *humans* experience the same increased

13   risk, particularly at the exposures alleged." *Id.*

14         Similarly, in *Cahen*, plaintiffs argued a risk of future harm because defendants

15   manufactured their cars with technology susceptible to hacking.  147 F. Supp. 3d at 969.  The court

16   dismissed the case for lack of standing, reasoning that plaintiffs did not plead a credible risk because

17   they "d[id] not allege that anybody outside of a controlled environment ha[d] ever been hacked."

18   *Id.*  Like the *Riva* plaintiffs who failed to allege a "credible and substantial" increased risk of cancer

19   for Pepsi drinkers, the *Cahen* plaintiffs failed to describe any "credible and substantial" risk that

20   their "vehicles might be hacked at some point in the future."  *Id.*  Because plaintiffs did not claim

21   any vehicles were actually hacked, the Ninth Circuit affirmed, holding that "[p]laintiffs have failed

22   to sufficiently allege an injury due to the risk of hacking itself."  *Cahen*, 717 F. App'x at 723.

23

24   requirements.  *See Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011).
     Nevertheless, Plaintiffs also cannot establish either traceability or redressability.  *Montana Envt'l.*
25   *Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014); *Lujan*, 504 U.S. at 560-61.

26   [47] The named plaintiffs also do not have standing to bring claims under the laws of 50 states and
     the District of Columbia, because the CAC indicates they are residents of only 19 of those
27   jurisdictions.  *See* CAC ¶¶ 24-29, 32-43, 45-52; *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d
     1168, 1175 (N.D. Cal. 2017); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d
28   1011, 1027 (N.D. Cal. 2007) (Alsup, J.).

1    In addition to pleading a credible risk of harm, a plaintiff must also establish that the risk is

2    imminent rather than speculative or hypothetical. *Clapper*, 568 U.S. at 414 (rejecting plaintiffs'

3    standing argument that was based on "speculative chain of possibilities"). In *Birdsong v. Apple,*

4    *Inc.*, for example, the plaintiffs did not have standing because they averred a "conjectural and

5    hypothetical" injury. 590 F.3d 955, 961 (9th Cir. 2009). The plaintiffs believed that the iPod

6    "pose[d] an unreasonable risk of noise-induced hearing loss." *Id.* at 956. According to the Ninth

7    Circuit, however, the "capability of producing unsafe levels of sound" and the possibility "that

8    consumers 'may' listen to their iPods at unsafe levels" did not constitute an injury. *Id. at* 961.

9    Furthermore, plaintiffs cannot evade the credibility and imminence requirements by

10   hedging their pleadings with equivocal language, such as "may" or "could." For instance, in

11   *Herrington v. Johnson & Johnson Cos.*, plaintiffs brought a putative consumer class action against

12   the manufacturer of children's bath products, contending the products contained a carcinogen.

13   2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010). The court held plaintiffs alleged neither a

14   credible nor a sufficiently imminent threat, reasoning that, rather than "plead facts to suggest that

15   a palpable risk exists," plaintiffs merely noted that the product "*may* be carcinogenic for humans"

16   and "there *could* be no safe levels for exposure to carcinogens." *Id.* at *3.

17   Here, Plaintiffs likewise do not present a credible and substantial increased risk of harm.

18   None of the plaintiffs who purchased iPhones have plausibly demonstrated a greater risk of injury.

19   Nor can they, as agencies charged with monitoring issues related to RF exposure and human safety,

20   including the FCC, EPA, FDA, NIOSH, and OSHA, have determined that no credible scientific

21   evidence shows cell phone usage leads to negative health effects like cancer. *See* RJN Ex. 3 (FCC,

22   *Wireless Devices and Health Concerns*). Specifically, as discussed above, the FCC recently

23   confirmed that "no scientific evidence establishes a causal link between wireless device use and

24   cancer or other illnesses." RJN Ex. 1 (FCC 2019 Resolution ¶ 12). The FCC reviewed "the best

25   available information," including from the FDA, EPA, and even the WHO, and declined to amend

26   its RF guidelines, finding that "no evidence has moved [any] sister health and safety agencies to

27   issue substantive policy recommendations for strengthening RF exposure regulation." RJN Ex. 1

28   (FCC 2019 Resolution ¶ 2, 11, 16).

Furthermore, similar to *Riva*, the rat studies Plaintiffs cite[48] were specifically considered and rejected by the FDA as not providing "sufficient evidence that there are adverse health effects in humans caused by exposures at or under the current radiofrequency energy exposure limits." RJN Ex. 1 (FCC 2019 Resolution ¶ 11 n.33) (quotation marks and citation omitted).  A National Toxicology Program scientist explained that "[t]he exposures used in the studies cannot be compared directly to the exposure that humans experience when using a cell phone," for a number of reasons.  RJN Ex. 1 (FCC 2019 Resolution ¶ 11 n.33) (quotation marks and citation omitted). And none of the other studies that Plaintiffs allude to (such as those from the Canadian Broadcasting Corporation, the French National Frequencies Agency, and the *Tribune* article) support any claim of harm.  Instead, a plain reading of the CAC reveals these studies merely identified RF radiation levels emitted at various distances by using a robotic probe.  *See* CAC ¶¶ 102-51.  Thus, Plaintiffs' nebulous risk of increased harm from iPhones resembles the speculative pleading in *Herrington*, among others, which the Court should reject.

### B.   Plaintiffs' Alleged Economic Harm Does Not Constitute An Injury.

Plaintiffs cannot manufacture an injury sufficient to confer standing by claiming that they overpaid for their iPhones as a result of Apple's conduct.  *See*, *e.g.*, CAC ¶¶ 207, 213.  In fact, a similar effort to establish Article III standing recently failed in this District.  The *In re Apple Processor Litigation* plaintiffs argued that an Apple software update diminished the value of their Apple devices because it slowed down the processors.  366 F. Supp. 3d 1103, 1105 (N.D. Cal. 2019).  The court rejected a diminution in value argument for two reasons.  *Id.* at 1109-10.

*First*, the plaintiffs failed to show a negative effect on the market for their Apple devices. *Id.*   The court explained that economic injury turned on whether the plaintiffs alleged a "demonstrable effect on the market for their specific [product]." *Id.* at 1109.  It compared the *Apple*

---

[48] Plaintiffs allege that RF radiation affects "living organisms."  CAC ¶¶ 9, 82.  They specifically allege that a study by the National Institute of Health identified an association between high RF exposure and male rats with heart schwannomas or cancerous heart tumors.  *Id.* ¶¶ 85-89.  Plaintiffs also allege that investigators at the Ramazzini Institute in Italy completed a study where "male rats developed schwannomas of the heart at statistically higher rates than control animals that were not exposed."  *Id.* ¶ 90.

*Processor* plaintiffs to those in *Cahen*, who also failed to establish economic injury with conclusory allegations. *Id* at 1110. In *Cahen*, the plaintiffs did not make specific allegations about diminution in value of their cars, and could not show injury. 147 F. Supp. 3d at 970.

*Second*, the court in *Apple Processor* observed that the plaintiffs did not "replace or discontinue use of their [Apple devices]." 366 F. Supp. 3d at 1110. The court rejected plaintiffs' "conclusory allegations that they 'would not have purchased [their Apple devices], or paid the prices they did.'" *Id.* (citation omitted); *see also Cahen*, 147 F. Supp. 3d at 971 ("Nor have [plaintiffs] alleged a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out of pocket damages.").

Here, Plaintiffs do not allege any demonstrable effect on the iPhone market. Nor did they seemingly replace or stop using their iPhones as a result of the purported health risks. Instead, like the plaintiffs in *Apple Processor*, they allege simply they "would not have purchased the phone and/or would not have paid as much for the phone had [they] understood the risk of radiation exposure from the phone." *See*, *e.g.* CAC ¶¶ 24-52. These conclusory statements do not give rise to a concrete and particularized injury required to confer standing.

### III.   PLAINTIFFS FAIL TO SATISFY RULE 9(B)

All of Plaintiffs' claims sound in fraud, as Plaintiffs assert either intentional misrepresentation, omission, concealment, or all three, [49] yet Plaintiffs do not plead their claims with the particularity required under Rule 9(b). *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005). Whether the word "fraud" appears in a claim or complaint is not dispositive. *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003). Rather, the test is whether the gravamen of a claim alleges a course of intentional deceit. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996). If so, Rule 9(b) demands that "a plaintiff state the who, what, when, where, and how of the misconduct charged." *Marcus v. Apple Inc.*, 2015 WL 151489, at *3 (N.D. Cal. Jan. 8, 2015) (Alsup, J.) (citing *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.

---

[49] *See, e.g.*, CAC ¶ 178 (negligent misrepresentation), ¶ 194 (negligence), ¶ 208 (UCL), ¶ 235 (CLRA), ¶ 270 (FAL), ¶ 299 (consumer protection acts), ¶ 312 (unjust enrichment), ¶ 329 (implied warranty).

1    2010)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal under

2    Rule 9(b) because plaintiff "failed to specify when he was exposed to [advertisements or sales

3    material] or which ones he found material" and "also failed to specify which sales material he relied

4    upon").  In addition, to state a claim based on an omissions-based claim, "plaintiff must describe

5    the content of the omission and where the omitted information should or could have been revealed."

6    *Marolda v. Symantec Corp*., 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

7         *Pirozzi* illustrates the rule.  There, the plaintiff alleged that Apple misrepresented

8    characteristics of its devices and its App Store.  913 F. Supp. 2d at 850.  Despite identifying a

9    number of misrepresentations alleged by the plaintiff, the court dismissed the complaint because

10   plaintiff "fail[ed] to provide the particulars of her own experience reviewing or relying upon any

11   of those statements."  *Id.*  Specifically, the plaintiff did not "specify when she was exposed to the

12   statements or which ones she found material to her decisions to purchase."  *Id.*

13        Here, Plaintiffs broadly assert that Apple engaged in fraudulent conduct by marketing its

14   iPhones as safe for use despite purportedly knowing of the alleged increased risk of harm.  Plaintiffs

15   contend Apple "cover[ed] up the actual RF radiation emissions of their smartphones" and "hid[]

16   this type of information from consumers."  CAC ¶¶ 4, 10.  Plaintiffs generally identify

17   advertisements concerning cell phones carried in pockets, used with bare hands, or kept nearby at

18   bedtime, but do not explain what is false about them.  *See* CAC ¶¶ 64-70.  But none of the ads make

19   representations about RF emissions, let alone mention safety.  *See In re Iphone 4S Consumer Litig*.,

20   2014 WL 589388, at *5 (N.D. Cal. Feb. 14, 2014), *aff'd*, 637 F. App'x 414 (9th Cir. 2016).

21        Plaintiffs have not identified any actionable affirmative representations by Apple upon

22   which they supposedly saw or relied when making their purchases.  Nor have Plaintiffs specifically,

23   or even plausibly, alleged a material omission, particularly since Apple provides the disclosures

24   required by law.  Accordingly, Plaintiffs' CAC must fail.

## IV.   PLAINTIFFS FAIL TO PLEAD CAUSATION OR RELIANCE

26        None of the Plaintiffs describe facts to establish the causation and/or reliance on the specific

27   marketing materials claimed to be misleading necessary to proceed.  *Sateriale v. R.J. Reynolds*

28   *Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012).  "[T]his Court has consistently held that plaintiffs

in misrepresentation cases must allege that they actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (collecting cases). Other states similarly require that plaintiffs plausibly allege causation and/or reliance.[50]

As explained above, Plaintiffs do not allege with particularity that they actually saw or relied on *any* specific Apple advertisement, let alone how it was false. Plaintiffs do not allege that any particular alleged statements had any impact on Plaintiffs' decisions to purchase its phones. Because Plaintiffs do not identify which (if any) statements they supposedly saw, Plaintiffs' allegations of supposed reliance on alleged misrepresentations and omissions "are a far cry from the factual allegations required by courts to sufficiently plead reliance." *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *8 (N.D. Cal. Mar. 14, 2014) (collecting cases).

Accordingly, because Plaintiffs do not plausibly plead causation or reliance, the causes of action under California and other states consumer protection laws should be dismissed.

## V. PLAINTIFFS' TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE

The economic loss doctrine bars tort claims where, as here, there is no physical injury and no damage to property. Under California law, for example, plaintiffs cannot recover in tort based on purely economic loss; personal injury or damage to property is required. *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206, 1221 (N.D. Cal. 2014).[51] Here, Plaintiffs have

---

[50] *See, e.g., Sterling v. Ourisman Chevrolet of Bowie Inc.*, 2015 WL 2213708, at *7 (D. Md. May 8, 2015) (holding that, although the Consumer Protection Division can prove an MCPA violation without proof of reliance, "a citizen must prove reliance to prevail on an MCPA claim"); *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 492 (D.N.J. 2017) (dismissing New Jersey, New York, and Arizona consumer protection claims because the "allegations d[id] not allow for an inference that Plaintiffs saw the misleading statements before they came into possession of the products they purchased, which they must do to properly allege causation or reliance under these statutes") (quotation marks and citation omitted); *Gidley v. Allstate Ins. Co.*, 2009 WL 3199599, at *4 (E.D. Pa. Oct. 6, 2009) (dismissing UTPCPL claim because plaintiffs "fail[ed] to identify any allegation in their complaint in which they allege justifiable reliance" on defendant's wrongful conduct or misrepresentation); *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 826 (Wash. App. Ct. 2001) ("[T]he consumers' failure to establish the causation element, essential to their CPA claim, also supports a grant of summary judgment in favor of the [defendants]."); Wyo. Stat. Ann. § 40-12-108 ("A person *relying* upon an uncured unlawful deceptive trade practice may bring an action under this act for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice." (emphasis added)).

[51] Courts have also held that the economic loss doctrine bars consumer protection claims. *See*, *e.g.*,

19

not alleged (i) personal injury, (ii) damage to property, (iii) or an applicable exception to the economic loss doctrine.  *See Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008).  The laws of several other states at issue in this case are in accord.[52]

*First*, none of the Plaintiffs sustained a personal injury sufficient to recover relief.  *Second*, none of the Plaintiffs sustained property damage.  At most, Plaintiffs merely allege that their iPhones diminished in value.  But that is insufficient as a matter of law.  Plaintiffs must sustain damage to "*other* property."  *Kalitta Air*, 315 F. App'x at 605 (emphasis added).  *Third*, although a special relationship between a plaintiff and defendant may create an exception to the economic loss doctrine, no such relationship exists here.  *See Morgan v. Apple Inc.*, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) ("Courts routinely reject negligence theories proceeding on the special relationship doctrine" unless "the manufacturer marketed a product with the specific plaintiff in mind rather than the general public.").

Plaintiffs cannot circumvent the economic loss doctrine simply by requesting medical monitoring.  In *Metro-North Commuter Railroad Co. v. Buckley*, the U.S. Supreme Court denied medical monitoring in the absence of physical injury.  521 U.S. 424, 427 (1997).  The Court felt "troubled" by the implications of abandoning the present injury requirement including a "flood" of claims based on fear and speculation, allowing claims that are "unreliable and relatively" trivial, "diminish[ing]" resources available to those who are actually injured, unpredictable and unlimited liability, and "higher prices" born by the public.  *Id.* at 435-36, 443-45.  Similar to *Buckley*, many states have rejected claims for medical monitoring "absent any evidence of present physical injury or damage to property."  *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452 (N.Y. 2013).[53]

---

*In re: Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *21 (D.N.J. Oct. 26, 2015) (dismissing Missouri, Virginia, North Carolina, Ohio, and Nebraska consumer protection claims).

[52] *E.g.*, *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011) (negligence and negligent misrepresentation claims barred); *Graham Constr. Servs., Inc. v. Hammer & Steel Inc.*, 755 F.3d 611, 616-17 (8th Cir. 2014) (negligent misrepresentation); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (same); *Coop. Power Ass'n v. Westinghouse Elec. Corp.*, 493 N.W.2d 661, 666 (N.D. 1992) (same).

[53] *See also Badillo v. Am. Brands, Inc.*, 16 P.3d 435, 440-41 (Nev. 2001); *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1100-01 (Ill. App. Ct. 2007); *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1302 (N.D. Ga. 2005), *aff'd*, 230 F. App'x 878 (11th Cir. 2007) (Georgia law); *Krottner v.*

DECHERT LLP
ATTORNEYS AT LAW

1    Others that have recognized medical monitoring have done so in narrow circumstances not

2   present here, such as to certain claims based on exposure to environmental contaminants.  *See*, *e.g.*,

3   *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008) (dismissing medical monitoring claim in

4   case involving a product because plaintiffs "do not allege personal physical injury" and thus could

5   not "satisfy the definition of harm to state a product liability claim under the [state's product

6   liability law]").  And even in states like California where "medical monitoring may be called for ...

7   in the absence of actual physical injury" in some situations, plaintiffs must still sufficiently allege

8   "that the need for monitoring is a reasonably certain consequence of the exposure."  *Potter v.*

9   *Firestone Tire & Rubber Co.*, 863 P.2d 795, 823 (Cal. 1993).  That depends on factors including

10   "the significance and extent of the plaintiff's exposure" and "the relative increase in the plaintiff's

11   chances of developing a disease as a result of the exposure."  *Id.*  "Because the burden on a

12   defendant to fund medical screening for thousands, potentially millions, of people is so substantial,

13   the *Potter* factors serve a critical gatekeeping function, regulating a potential flood of costly

14   litigation …."  *Riva*, 82 F. Supp. 3d at 1061.

15    In *Riva*, the plaintiffs alleged that Pepsi contained unhealthy levels of a carcinogen known

16   as "4-Mel" that "caused them to experience an 'increased risk of cancer,'" and sought medical

17   monitoring.  *Id.* at 1050.  Applying *Potter*, the court in *Riva* concluded that the plaintiffs did not

18   sufficiently allege a reasonably certain need for medical monitoring and dismissed the request as a

19   matter of law, even though it found that the plaintiffs had adequately pled that 4-Mel "is toxic and

20   is, generally speaking, a carcinogen—i.e., that 4-Mel is capable of causing cancer."  *Id.* at 1058.

21    Although plaintiffs alleged drinking Pepsi as much as 30 times per week, they did not allege

22   what threshold level of exposure creates the increased risk, and thus failed to provide context to the

23   significance and extent of exposure "to make the necessary ultimate showing that 'the need for

24   future monitoring is a reasonably certain consequence of [the] toxic exposure.'"  *Id.* at 1057

25   (citation omitted).  Despite asserting an increased risk of disease from 4-Mel, other "commonly-

26   ───────────────

27   *Starbucks Corp.*, 2009 WL 7382290, at *7 (W.D. Wash. Aug. 14, 2009) (Washington law), *aff'd*
*in part on other grounds*, 628 F.3d 1139 (9th Cir. 2010); *Thompson v. Am. Tobacco Co.*, 189 F.R.D.

28   544, 552 (D. Minn. 1999); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 518-19 (D.N.D. 2005);
*McCormick v. Halliburton Co.*, 895 F. Supp. 2d 1152, 1155-56 (W.D. Okla. 2012).

DECHERT LLP
ATTORNEYS AT LAW

1   consumed foods" contained "similar levels of" 4-Mel, making it "implausible to conclude that any

2   alleged increased risk of cancer is 'more likely than not' caused by" Pepsi.  *Id.* at 1062.

3       As discussed, iPhones emit RF radiation at levels within FCC parameters, the FCC's RF

4   exposure limits "are set with a large safety margin, well below the threshold for unacceptable rises

5   in human tissue temperature," RJN Ex. 1 (FCC 2019 Resolution ¶ 14), and the FCC has concluded

6   that "no scientific evidence establishes a causal link between wireless device use and cancer or

7   other illnesses," *id.* ¶ 14.  Plaintiffs' speculative request for medical monitoring thus fails.

8   **VI.   PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY FAILS**

9       "The California Commercial Code implies a warranty of merchantability that goods '[a]re

10  fit for ordinary purposes for which such goods are used.'"  *Birdsong v. Apple, Inc.*, 590 F.3d 955,

11  958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)).[54]  The Code, however, permits sellers

12  to "disclaim the implied warranty of merchantability so long as the disclaimer 'mentions[s]

13  merchantability' and is 'conspicuous.'"  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal.

14  2014) (quoting Cal. Com. Code § 2316(2)).

15      Here, Apple's Hardware Warranty disclaimed the implied warranty of merchantability.  In

16  every version of the hardware warranty from December 6, 2014 to present, Apple conspicuously

17  disclaimed the warranty of merchantability in all caps:  "APPLE DISCLAIMS ALL STATUTORY

18  AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF

19  MERCHANTABILITY ...."[55]  Because the disclaimer is in writing, conspicuous, and mentions

20  merchantability, Plaintiffs' claim for breach of implied warranty of merchantability fail as a matter

21  of law.  *See Minkler*, 65 F. Supp. 3d at 819 (dismissing breach of implied warranty claims against

22  Apple based on the same disclaimer).

23      Even if the Court finds that Apple did not disclaim implied warranties or that such a

24  ────────────────────────

25  [54] Plaintiffs' claims for breach of implied warranty of merchantability based on other state laws
    also fail.  *See Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987) ("Under the
26  Uniform Commercial Code as adopted by ... virtually every ... state, a manufacturer may disclaim
    the implied warranties of merchantability and fitness provided that the disclaimer is in writing and
27  conspicuous, and provided that the disclaimer is part of the parties' bargain.").
    [55] Apple One Year Limited Warranty, https://www.apple.com/legal/warranty/products/warranty-
28  us.html ("Apple Warranty") (RJN Ex. 13).

DECHERT LLP
ATTORNEYS AT LAW

1   disclaimer is not permitted in certain of the states identified in the CAC, Plaintiffs still have not

2   alleged plausible facts that Apple's iPhones are unfit for their ordinary purpose.[56]  Generally, the

3   implied warranty "can be breached only if the [product] manifests a defect that is so basic that it

4   renders the [product] unfit for its ordinary purpose."  *Am. Suzuki Motor Corp. v. Superior Court*,

5   44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995).  A product becomes unfit for its ordinary use if it

6   "creates an unreasonable safety risk when used in a reasonably foreseeable manner."  *Birdsong v.*

7   *Apple Inc.*, 2008 WL 7359917, at *3 (N.D. Cal. June 13, 2008), *aff'd*, 590 F.3d 955 (9th Cir. 2009).

8   But a product does not become unfit based on "speculative risks, safety-related or otherwise."  *Am.*

9   *Suzuki*, 44 Cal. Rptr. 2d at 530.

10         As discussed above, multiple federal regulatory agencies have concluded that RF emissions

11   from cell phones are safe.  RJN Ex. 1 (FCC 2019 Resolution ¶¶ 2, 11, 12).  And none of the

12   Plaintiffs alleged an inability to use their phones or even needing to use their phones differently.

13   *See Marcus*, 2015 WL 151489, at *9 ("Plaintiffs have failed to allege that Apple's logic boards

14   were unfit for their ordinary purposes or lacked a minimal level of quality.  Both plaintiffs were

15   able to adequately use their computers for approximately 18 months and two years, respectively.");

16   *Williamson v. Apple*, 2012 WL 3835104, at *8-9 (N.D. Cal. Sept. 4, 2012) (dismissing implied

17   warranty claim).  Thus, Plaintiffs' general allegations about "an increased risk of RF radiation"

18   rendering iPhones "unfit for their ordinary purposes," CAC ¶ 328, fail to state a claim for breach

19   of implied warranty.[57]

[56] Plaintiffs also fail to sufficiently allege reasonable notice of the purported breach to Apple, which is further grounds for dismissal.  *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *see also Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (New Jersey requires pre-litigation notice for breach of implied warranty claims); *see also Richards v. Johnson & Johnson, Inc.*, 2018 WL 2976002, at *8 (N.D.N.Y. June 12, 2018) (same for New York).  Here, Plaintiffs' conclusory allegation that they "have provided Defendant with notice of its breach of implied warranties under any states where such notice is required," CAC ¶ 325, lacks sufficient specificity to show entitlement to relief.  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

[57] Moreover, the Limited Warranty limits the duration of any implied warranties not disclaimed to one year (*i.e.*, the same term provided for by Apple's express warranty).  *See* RJN Ex. 13 (Apple Warranty).  Thus, claims for implied warranty of merchantability should be dismissed to the extent the warranty period has expired.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010); Cal. Civ. Code

23

DECHERT LLP
ATTORNEYS AT LAW

1

## VII.   PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT FAILS

2

3        Under California law, courts frequently dismiss stand-alone claims for unjust enrichment

4   since it is not a separate cause of action.  *See e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010,

5   1031 (N.D. Cal. 2012).  Although courts sometimes construe unjust enrichment claims as quasi

6   contract claims, those circumstances generally involve "quasi-contract claims premised on false

7   and misleading labels."  *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *10 (N.D. Cal. Aug. 30,

8   2019).  In *Brodsky*, for example, the court dismissed plaintiffs' stand-alone unjust enrichment claim

9   because plaintiffs did not allege "that Apple [wa]s liable in quasi-contract or that [its two-factor

10   authentication] was somehow mislabeled."  *Id.*

11        Here, however, Plaintiffs do not argue that Apple is liable in quasi-contract.  Nor do

12   Plaintiffs sufficiently allege false or misleading labeling.  Instead, Plaintiffs claim that Apple

13   received a non-gratuitous benefit because they purchased iPhones "without knowledge that

14   [Apple's] smart phones emitted RF radiation at unsafe levels and/or at levels that exceeded federal

15   limits." CAC ¶ 310.  These allegations, which depend on purchases of unsafe iPhones, do not meet

16   the standard.  As discussed above, Plaintiffs purchased iPhones certified by the FCC, and which

17   the FCC recently confirmed are safe.  Therefore, Plaintiffs' unjust enrichment claims based on

unsafe levels of RF radiation necessarily fail.

18

## VIII.   PRODUCT LIABILITY STATUTES PRECLUDE CERTAIN STATE COMMON
## LAW AND STATUTORY CLAIMS

19

20        Finally, while Plaintiffs do not specify which state laws apply to their several common law

21   claims—including for negligent misrepresentation, negligence, and unjust enrichment, which in

22   and of itself is a ground for dismissal, [58] some states have Product Liability Acts that subsume

23   ──────────────

§ 1791.1(c).

24   [58] *See, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (dismissing unjust enrichment claim where plaintiffs "do not identify any particular law but instead assert their

25   claim 'on behalf of the nationwide Class based upon universal principles in equity,' ... In order for the Court to determine whether the unjust enrichment claim has been adequately pled, Plaintiff

26   must allege the applicable law"); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018) ("As this Court and other courts in this district

27   have recognized due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.") (citations and quotations omitted); *Augustine v.*

28   *Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("Plaintiffs failure

1  common law and statutory claims relating to products and render Plaintiffs' claims legally invalid.

2  For example, Plaintiffs' claims under New Jersey law, including the Consumer Fraud Act, N.J.

3  Stat. Ann. § 56:8, et seq., for negligence, negligent misrepresentation, breach of implied warranty,

4  and unjust enrichment, all fail because they are subsumed by the New Jersey Products Liability Act

5  (NJPLA), which provides the "exclusive remedy" for alleged "harm caused by a product." *Bailey*

6  *v. Wyeth, Inc.*, 37 A.3d 549, 580 (N.J. Super. Ct. Law. Div. 2008), *aff'd sub nom. DeBoard v.*

7  *Wyeth, Inc.*, 28 A.3d 1245 (N.J. Super. Ct. App. Div. 2011).  NJPLA defines a product liability

8  action as "any claim or action brought by a claimant for harm" caused by a product, irrespective of

9  the theory underlying the claim, except action for harm caused by breach of an express warranty.

10  N.J. Stat. Ann. § 2A:58C-1(b)(3).  NJPLA's "statutory definition is an expansive one, including

11  every conceivable variation on the theme of harm." *Sinclair v. Merck & Co.*, 948 A.2d 587, 598

12  (N.J. 2008).  Accordingly, NJPLA precludes Plaintiffs' New Jersey law claims and should be

13  dismissed. *See id.* at 588-89, 596; *In re Testosterone Replacement Therapy Prods. Liab. Litig.*,

14  2018 WL 4030586, at *4 (N.D. Ill Aug. 23, 2018) (New Jersey law).

15  Similarly, "Washington law recognizes only a single product liability cause of action under

16  the WPLA which preempts common law claims based on injuries caused by allegedly harmful

17  products." *Manjares v. Taser Int'l, Inc.*, 2012 WL 5389688, at *3 (E.D. Wash. Nov. 2, 2012).

18  ## CONCLUSION

19  For the foregoing reasons, Apple respectfully requests that the Court grant its motion to

20  dismiss with prejudice.

21  Dated January 2, 2020                    DECHERT LLP

22                                          By:   */s/ Jonathan S. Tam*
                                                  Jonathan S. Tam (Bar No. 304143)
23                                                Christina Guerola Sarchio (*pro hac vice*)
                                                  Mark S. Cheffo (*pro hac vice*)
24                                                Amisha R. Patel (*pro hac vice*)

25                                          *Attorneys for Defendant Apple Inc.*

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled.").