1    Jonathan S. Tam (Bar No. 304143)        Mark S. Cheffo (*pro hac vice*)
     DECHERT LLP                             DECHERT LLP
2    One Bush Street                         1095 Avenue of the Americas
     San Francisco, CA  94104-4446           New York, NY  10036-6797
3    Telephone:  415-262-4518                Telephone:  212-698-3814
     Facsimile:  415-262-4555                Facsimile:  212-698-3599
4    jonathan.tam@dechert.com                mark.cheffo@dechert.com

5    Christina Guerola Sarchio (*pro hac vice*)
     Amisha R. Patel (*pro hac vice*)
6    DECHERT LLP
     1900 K Street, NW
7    Washington, D.C.  20006-1110
     Telephone:  202-261-3300
8    Facsimile:  202-261-3333
     christina.sarchio@dechert.com
9    amisha.patel@dechert.com

10   *Attorneys for Defendant Apple Inc.*

11                    UNITED STATES DISTRICT COURT
12                  NORTHERN DISTRICT OF CALIFORNIA
                        SAN FRANCISCO DIVISION
13

14   ANDREW COHEN, et al.,                   Case No.: 3:19-cv-5322-WHA

15                     Plaintiffs,           **NOTICE OF MOTION, MOTION FOR
                                             SUMMARY JUDGMENT AND A
16   v.                                      STAY OF DISCOVERY
                                             AND MEMORANDUM AND POINTS
17   APPLE, INC.,                            OF AUTHORITIES IN SUPPORT
                       Defendant.            THEREOF**
18
                                             Date: June 4, 2020
19                                           Time: 8:00 am
                                             Judge:  Hon. William H. Alsup
20                                           Courtroom: 12

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.    INTRODUCTION ................................................................................. 2

II.   STATEMENT OF FACTS ................................................................. 5

    **A.**   FCC's Extensive Regulation of RF Emissions from Cell Phones ............. 5

    **B.**   Plaintiffs' Lawsuit Challenging Apple's Compliance with FCC Regulations................................................................................. 7

    **C.**   The FCC's Submission To The Court On The Proper Application Of Its Regulation And Guidance................................................. 9

III.  STANDARD OF REVIEW ............................................................. 11

IV.  ARGUMENT ................................................................................. 12

    **A.**   The FCC's Submission Underscores How Plaintiffs Claims Are An Attack on Its Standards And Cannot Stand................................. 13

        1.   The FCC Statement is entitled to deference.................................. 13

        2.   Courts elsewhere have deferred to the FCC's views with respect to RF emissions in dismissing claims on preemption grounds........................................................................................ 15

        3.   The FCC has made clear that Plaintiffs' claims conflict and pose an obstacle to its objectives. .................................................. 17

        4.   Plaintiffs' efforts to have this Court adjudicate whether Apple violated the FCC's requirements undermines and interferes with the FCC's authority to punish and deter fraud against it. ....................................................................................... 19

        5.   This Court lacks jurisdiction over Plaintiffs' claims. .................. 21

    **B.**   The Court Should Stay Discovery Pending Its Decision ......................... 22

V.   CONCLUSION ................................................................................. 24

Dechert LLP
Attorneys At Law

i

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

*All Am. Tel. Co., Inc. v. AT & T Corp.*,
   328 F. Supp. 3d 342 (S.D.N.Y. 2018)................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................................11

*Balvage v. Ryderwood Improvement & Serv. Ass'n*,
   642 F.3d 765 (9th Cir. 2011).........................................................................................2, 14

*Bank of Am. v. City & Cty. of San Francisco*,
   309 F.3d 551 (9th Cir. 2002)............................................................................................14

*Barboza v. Cal. Ass'n of Prof'l Firefighters*,
   651 F.3d 1073 (9th Cir.2011)...........................................................................................14

*Barnes v. Howmedica Osteonics Corp*,
   No. 09-2556, 2010 WL 11565343 (N.D. Ala. Dec. 14, 2010).........................................23

*Bearden v. E.I. du Pont de Nemours and Co.*,
   No. 16-158, 2016 WL 11301378 (M.D. Ga. Nov. 2, 2016).............................................23

*Bennett v. T-Mobile USA, Inc.*,
   597 F. Supp. 2d 1050 (C.D. Cal. 2008).......................................................................5, 13

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001)...........................................................................................................20

*Cellular Phone Taskforce v. FCC*,
   205 F.3d 82 (2d Cir. 2000).................................................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................................................11

*Chase Bank USA, N.A. v. McCoy*,
   562 U.S. 195 (2011)...........................................................................................................14

*Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*,
   201 F.R.D. 1 (D.D.C. 2001)..........................................................................................2, 12

*City of N.Y. v. FCC*,
   486 U.S. 57 (1988).............................................................................................................14

*EMR Network v. FCC*,
   391 F.3d 269 (D.C. Cir. 2004) ...........................................................................................6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*F.C.C. v. ITT World Commc'ns, Inc.*,
    466 U.S. 463 (1984)......................................................................................................22

*Farina v. Nokia Inc.*,
    625 F.3d 97 (3d Cir. 2010)........................................................................................5, 16

*Filtrol Corp. v. Kelleher*,
    467 F.2d 242 (9th Cir. 1972)........................................................................................23

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
    391 U.S. 253 (1968)......................................................................................................11

*Firstenberg v. Monribot*,
    350 P.3d 1205 (N.M. Ct. App. 2015).........................................................................13

*Fontana v. Apple Inc.*,
    321 F. Supp. 3d 850 (M.D. Tenn. 2018).....................................................................13

*Gale v. Mentor Worldwide, LLC*,
    No. 19-2088, 2019 WL 2567790 (D. Kan. June 21, 2019).........................................23

*Gilbert v. Ferry*,
    401 F.3d 411 (6th Cir. 2005).....................................................................................2, 12

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    No. 05-1699, 2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) .....................................20

*In re Graphics Processing Units Antitrust Litig.*,
    No. 06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) (Alsup, J.)..................24

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*,
    730 F.3d 1024 (9th Cir. 2013)......................................................................................14

*Jenkins v. Medtronic, Inc.*,
    No. 13-2004, 2014 WL 10384962 (W.D. Tenn. June 30, 2014) ................................23

*Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*,
    727 F. Supp. 2d 887 (E.D. Cal. 2010)..........................................................................22

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)......................................................................................................22

*Levya v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979).........................................................................................22

*Murray v. Motorola, Inc.*,
    982 A.2d 764 (D.C.2009)........................................................................................15, 16

Dechert LLP
Attorneys At Law

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ........................................................................................21

*Page v. Work*,
   290 F.2d 323 (9th Cir. 1961) ............................................................................2

*Penn Advert. of Balt., Inc. v. Mayor & City Council of Balt.*,
   63 F.3d 1318 (4th Cir. 1995), *vacated and remanded*, 518 U.S. 1030 (1996),
   *aff'd on remand*, 101 F.3d 332 (4th Cir. 1996) ..........................................2, 12

*Robbins v. New Cingular Wireless PCS, LLC*,
    854 F.3d 315 (6th Cir. 2017) ..........................................................................16

*Silvas v. E*Trade Mortg. Corp.*,
   514 F.3d 1001 (9th Cir.2008) ..........................................................................14

*Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*,
   565 F.3d 545 (9th Cir.2009)..............................................................................14

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .......................................................................................

*Tablada v. Thomas*,
   533 F.3d 800 (9th Cir. 2008) ............................................................................14

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994) .........................................................................................14

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) .........................................................................................14

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002) ......................................................................2, 12

**STATUTES**

28 U.S.C. § 2342 ...............................................................................................22

47 U.S.C. § 402 .................................................................................................22

47 U.S.C. § 151 ...................................................................................................5

47 U.S.C. § 303 ...................................................................................................5

47 U.S.C. § 332 ...................................................................................................5

Communications Act of 1934, Pub. L. No. 73-416, 48 Stat. 1064 ......................5

Telecommunications Act of 1996, Pub. L. No. 104-104, 101 Stat. 56 .................5

## OTHER AUTHORITIES

47 C.F.R. §§ 1.1307 ..............................................................................................17

47 C.F.R. § 1.1310 ................................................................................................5

47 C.F.R. § 2.1033 ................................................................................................8

47 C.F.R. § 2.1091 ..............................................................................................17

47 C.F.R. § 2.1093 ..........................................................................................5, 17

47 C.F.R. § 2.803 ...............................................................................................17

47 C.F.R. §§ 2.945 .............................................................................................21

47 C.F.R. § 68.160 ................................................................................................5

47 C.F.R. § 68.162 ...........................................................................................3, 6

Fed. R. Civ. P. 12(b)(1) ........................................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................................9

Fed. R. Civ. P. 56 ......................................................................................1, 11, 12

DECHERT LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN THAT, on the date and time designated by the Honorable William H. Alsup,[1] in the United States District Court for the Northern District of California, San Francisco, California, Defendant Apple Inc. ("Apple") shall and hereby does move this Court as follows:

> 1)      For Summary Judgment under Federal Rule of Civil Procedure 56 and
>
> 2)      a Stay of Discovery Pending a Decision on this Motion.

This Court previously stated that "[i]f the operative complaint cannot support plaintiffs' claims as a matter of law, Apple should be poised to bring a Rule 56 motion on those issues without the need for much further discovery."[2]   Since then, the Federal Communications Commission ("FCC" or "Commission") responded to the Court's invitation to provide it with guidance by filing a Statement of Interest ("Statement") on the dispositive issues of preemption and jurisdiction.[3]  The FCC explained that the sole relevant fact for preemption is that Apple iPhones are FCC-certified because "[a]ny claim that FCC-certified cell phones are unsafe" would conflict with its judgment.[4] The FCC further explained that, although Plaintiffs "seek to call Apple to account for not testing its iPhones in a manner that is not required by the Commission's testing procedures," this Court lacks jurisdiction to consider any challenge to the adequacy of reasonableness of the FCC's testing procedures for assessing compliance with radiofrequency ("RF") emissions limits.[5]

Accordingly, in light of the Court's directive, and given that these issues may be dispositive, Apple respectfully moves for summary judgment under Federal Rule of Civil Procedure 56 solely on the threshold legal issues—preemption and jurisdiction—raised in the FCC's Statement.[6]

---

[1] In light of the public health concern caused by COVID-19, the Court has indicated that any pending civil motion will be submitted on the papers and that the Court will issue a notice setting a telephonic hearing, if needed.

[2] Mot. Reconsideration Order, ECF 100 at 2.

[3] Statement of Interest of the United States at 2, ECF No. 101-1(on behalf of the Federal Communications Commission) ("FCC Statement").

[4] *Id.* at 2.

[5] *Id.* at 12.

[6] Apple moves for summary judgment on these two threshold legal issues while expressly reserving

DECHERT LLP
ATTORNEYS AT LAW

1   Apple also respectfully requests a stay of all discovery pending the Court's decision on the

2   instant motion.  Given that the FCC has deemed iPhones as compliant with federal regulations and

3   safe not once but *twice*, and Plaintiffs have asserted claims over which this Court does not have

4   jurisdiction, a stay while the Court is deciding this dispositive motion promotes judicial economy

5   and does not prejudice Plaintiffs.[7]

6   **MEMORANDUM OF POINTS AND AUTHORITIES**

7   **I.   INTRODUCTION**

8   In its February 10, 2020 decision denying Apple's Motion to Dismiss, this Court stated that

9   it is "inclined to hold that if the Apple products ultimately satisfy the Commission's standard, then

10   all claims must be dismissed on preemption grounds."[8]  To the extent the Court had a question

11   about Apple compliance with the FCC standard, the FCC has now spoken on this dispositive issue.

12   On April 13, 2020, the FCC served its Statement of Interest at the invitation of the Court to better

13   inform the Court on the proper application of its regulation and guidance to mobile phones.[9]  The

14

15

16   and without waiving its right to bring a subsequent dispositive motion on its other affirmative
    defenses or defenses that may be raised after further investigation.  *See All Am. Tel. Co., Inc. v. AT*
17   *& T Corp.*, 328 F. Supp. 3d 342, 365, 368 (S.D.N.Y. 2018) (granting summary judgment before
    discovery because FCC's regulatory scheme preempted plaintiffs' state law claims); *Bank of Am.*
18   *v. City & Cty. of San Francisco*, 309 F.3d 551, 566 (9th Cir. 2002) (granting motion for summary
    judgment based on preemption); *see also Page v. Work*, 290 F.2d 323, 334 (9th Cir. 1961) (entering
19   summary judgment based on lack of jurisdiction).

20
21   [7] *See Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming order barring discovery
    pending resolution of dispositive motion); *Penn Advert. of Balt., Inc. v. Mayor & City Council of*
22   *Balt.*, 63 F.3d 1318, 1322 (4th Cir. 1995) (affirming stay: "We agree that the issues presented to
    the district court were questions of law which could be resolved without further development of the
23   factual record.  The *preemption* issue rests on a *legal* interpretation . . . .") (emphasis added),
    *vacated and remanded*, 518 U.S. 1030 (1996), *aff'd on remand*, 101 F.3d 332 (4th Cir. 1996);
24   *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001)
    (staying discovery pending decision on dismissal and summary judgment motions that would be
25   dispositive of "the entire case") (citation omitted); *see also Gilbert v. Ferry*, 401 F.3d 411, 416 (6th
    Cir. 2005) (affirming stay of discovery pending motion for summary judgment premised on lack
26   of subject matter jurisdiction).

27   [8] Mot. Dismiss Order, ECF 89 at 4.

28   [9] FCC Statement, ECF 101-1 at 1.

1  FCC Statement is dispositive on the issues before the Court, and since there is no genuine dispute

2  concerning any material facts, Apple moves for summary judgment.

3  This lawsuit was preceded by an article in the *Chicago Tribune* that reported that certain

4  iPhones exceed FCC RF compliance standards.[10]  Plaintiffs claimed to have been damaged because

5  (1) certain iPhones allegedly exceed FCC RF exposure limits and (2) Apple did not disclose to

6  Plaintiffs that RF exposure could exceed FCC limits when used directly against the body.[11]

7  However, as the FCC explained in its Statement, prior to being permitted to sell iPhones in the

8  United States, Apple was required to obtain the FCC's certification for each iPhone model, which

9  certification process required Apple to "demonstrate [to a Telecommunication Certification

10  Body][12] that its phones comply with the FCC's RF exposure limits by submitting with its

11  application the results of testing performed by an FCC-recognized accredited testing laboratory and

12  consistent with FCC specifications concerning the testing protocol."[13]  Apple did just that.  All

13  iPhones have been deemed certified for sale because they "satisfy the FCC's RF standard," and are

14  therefore safe for use by consumers.[14]

15  Nonetheless, given that the "'FCC takes claims of non-compliance with its regulations

16  seriously,'" in the aftermath of this article, it re-tested the commercially available iPhone models

17  that were referenced in the article (as well as an additional iPhone model) and, as stated in the

18  Statement, the FCC found "no 'evidence of violations of any FCC rules regarding maximum RF

19  exposure levels.'"[15]

20

21  [10] CAC, ECF 53 ¶¶ 124-25.

22  [11] *See, e.g.*, Consolidated Amended Complaint, ECF 53 ¶¶ 4, 10 ("CAC").

23  [12] The FCC designates communication Certification Body ("TCB") to certify mobile phones.  47
24  C.F.R. § 68.160   The TCB has "expert knowledge of the regulations" regarding the technical
   requirements for mobile phone certification.  47 C.F.R. § 68.162(c)(2).  The application to the TCB
25  must include extensive information about the proposed, including operating instructions to be
   furnished to the user and all technical compliance reports.

26  [13] *Id.* at 6-7 (citation omitted).

27  [14] *Id.* at 2.

28  [15] FCC Statement, ECF 101-1 at 10, 15 (citations omitted).

The FCC went further in its Statement though.  As the federal agency with "expert judgment in balancing the goal of facilitating broad deployment of wireless telecommunications technology, while safeguarding the health of American consumers,"[16] the FCC explained that Plaintiffs' claims are preempted because they impede FCC's "exclusive" authority to regulate RF emissions.[17]

Although Plaintiffs claimed to have tested the iPhones, the FCC explained that such third-party testing "may have inaccurately measured the RF emissions" because testing requires a "detailed understanding" of designs and arrangements that are mostly "non-public and proprietary."[18]  But more importantly, the FCC clarified that such third-party testing is simply inconsequential as the FCC has established a testing and certification regime, which with Apple complies.  And compliance with *that* regime is what matters.[19]  Moreover, the FCC recently "'decline[d] to revisit'" the parameters of that regime.[20]  Indeed, the FCC recently "review[ed] the latest scientific research" and concluded that "existing RF limits 'reflect the best available information concerning safe levels of RF exposure for workers and members of the general public.'"[21]

Thus, the FCC explained that Plaintiffs claims are "beyond the Court's jurisdiction . . . and preempted" because they conflict with the FCC's "considered policy judgment."[22]  Moreover, to the extent that Plaintiffs' claims require this Court to examine the validity of that decision, the FCC stated that this Court "lacks jurisdiction over them because any such claims are subject to the Hobbs Act and thus can only be brought in a court of appeals in a direct challenge to that FCC order."[23]

---

[16] FCC Statement, ECF 101-1 at 2.

[17] *Id.* at 3 (quoting *Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424, 430 n.6 (1963)).

[18] *Id.* at 15, 16.

[19] *Id.*

[20] *Id.* at 12 (citation omitted).

[21] *Id.* at 6 (citation omitted).

[22] *Id.* at 17, 19.

[23] *Id.* at 2.

1   **II.   STATEMENT OF FACTS**[24]

2    **A.   FCC's Extensive Regulation of RF Emissions from Cell Phones**

3     Congress and the FCC have long regulated the telecommunications industry generally, and

4   RF emissions from cell phones specifically. *Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050,

5   1052 (C.D. Cal. 2008).  In particular, the FCC's "centraliz[ed] authority" to regulate wire and radio

6   communications is grounded in the Communications Act of 1934, which charges the Commission

7   with "mak[ing] available . . . to all the people in the United States . . . a rapid, efficient, Nation-

8   wide, and world-wide wire and radio communication service."  47 U.S.C. § 151.  The Act also

9   gives the FCC exclusive jurisdiction to "[r]egulate the kind of apparatus to be used" for wireless

10   radio communications and "the emissions" that such equipment may produce.  47 U.S.C. § 303(e).

11     In 1996, Congress directed the FCC to "prescribe and make effective rules regarding the

12   environmental effects of radio frequency emissions" and "set standards for RF emissions."

13   Telecommunications Act of 1996, Pub. L. No. 104-104, § 704(b), 101 Stat. 56, 152; 47 U.S.C.

14   § 332(c)(7)(B)(iv).   In response, the FCC adopted RF exposure limits for cell phones that

15   represented "the best scientific thought" and were "sufficient to protect the public health."[25]  *See*

16   *Farina v. Nokia Inc.*, 625 F.3d 97, 126 (3d Cir. 2010) ("[G]iven the current state of the science, the

17   FCC considers all phones in compliance with its standards to be safe.").  The FCC established a

18   limit on the "specific absorption rate," or "SAR," which is "a measure of the rate of RF energy

19   absorption."[26]  That limit has been and continues to be 1.6 watts per kilogram (W/kg) averaged

20   over one gram of tissue.[27]

21     As Plaintiffs acknowledge, the FCC requires cell phone manufacturers to ensure that their

22   devices comply with 1.6 W/kg limit through a rigorous program of testing.[28]  A cell phone cannot

---

[24] The Court is directed to the accompanying Declaration of Christina G. Sarchio in Support of Apple's Motion for Summary Judgment for true and correct copies of cited exhibits ("Ex.").

[25] *Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 11 F.C.C. Rcd. 15123 ¶ 168 (Aug. 1, 1996) ("FCC 1996 Order") (Ex. 1).

[26] Ex. 1 (FCC 1996 Order ¶ 3); *see also* 47 C.F.R. § 1.1310(a).

[27] Ex. 1 (FCC 1996 Order ¶¶ 49, 62-65); 47 C.F.R. § 2.1093(d)(2).

[28] CAC, ECF 53 ¶¶ 92, 94.

DECHERT LLP
ATTORNEYS AT LAW

be legally sold in the United States without certification by the FCC that the phone model has undergone the FCC-prescribed testing and demonstrated SAR values at or below 1.6 W/kg.[29] Before a cell phone can be placed on the market, it must be certified by a TCB, pursuant to 47 C.F.R. §68.162, and the FCC requires TCBs to "conduct appropriate surveillance activities" of cell phones *even after certification*.  47 C.F.R. § 68.162(g)(2).  The FCC's regulations for cell phone RF emissions have been upheld by two federal courts of appeals.  *EMR Network v. FCC*, 391 F.3d 269, 272-74 (D.C. Cir. 2004) (finding that the FCC "properly credited outside experts" and describing articles submitted by petitioner as "nothing if not tentative"); *Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 91-92 (2d Cir. 2000) (stating that the establishment of "safety margins" is "a policy question, not a legal one").

In December 2019, after a Notice and Comment period lasting six years and consideration of over a thousand comments, the FCC issued an order declining to change the existing SAR limits because no "data in the record . . . support[ed] modifying [the] existing exposure limits" and "no expert public health agency expressed concern" about them.[30]  Specifically, the FCC declined to revisit its RF emissions evaluation procedures and rejected calls that testing should be conducted in closer proximity to the body:

> (1) cell phones are [already] "tested against the head without any separation distance"; (2) testing is currently performed at maximum power, "under more extreme conditions than a user would normally encounter"; and (3) the "existing exposure limits are set with a large safety margin, well below the threshold for unacceptable rises in human tissue temperature."[31]

---

[29] FCC, *Wireless Devices and Health Concerns* at 2 (Oct. 15, 2019) (Ex. 2) ("[A]ll wireless devices are certified to meet the FCC maximum SAR standards, which incorporate a considerable safety measure.").

[30] FCC, *Proposed Changes in the Commission's Rules Regarding Human Exposure to Radiofrequency Electromagnetic Fields*, 34 FCC Rcd 11687, 11688 ¶ 10 (Dec. 4, 2019) ("FCC 2019 Order") (Ex. 3).

[31] FCC Statement, ECF 101-1 at 8 (quoting Ex. 3 (FCC 2019 Order) ¶ 19).  The FCC's limit on RF emissions has a ***fifty-fold*** safety factor built into it, as 1.6 W/kg is "one-fiftieth of the point at which RF energy begins to cause any unhealthful thermal effect." *See* FCC Brief, *Citizens for the Appropriate Placement of Telecommc'n Facilities*, No. 00-393, 2000 WL 33999532, at *3 n.2 (U.S. Dec. 4, 2000) ("The FCC exposure limit for the general public is one-fiftieth of the point at which RF energy begins to cause any unhealthful thermal effect."); FDA, Press Release, Statement from Jeffrey Shuren, M.D., J.D., Director of the FDA's Center for Devices and Radiological Health on

Thus, the FCC explained that "'any claim as to the adequacy of the FCC required testing, certification, and authorization regime is no different than a challenge to the adequacy of the RF exposure limits themselves,'" since "[b]oth types of claims would undermine the FCC's substantive policy determinations."[32]

### B.   Plaintiffs' Lawsuit Challenging Apple's Compliance with FCC Regulations

Plaintiffs filed this lawsuit in August 2019, on the heels of an article published by the *Chicago Tribune* stating that a lab it hired to test various wireless devices found that certain iPhones—as well as other manufacturers' devices—registered above the FCC's RF emissions limit.[33]  Plaintiffs subsequently hired the same lab to perform testing and claim the results of that testing also exceeded federal limits.[34]

Plaintiffs filed the Consolidated Amended Complaint ("CAC") on December 5, 2019, alleging, *inter alia*, that Apple "intentionally misrepresented the safety of the iPhones, assuring Class Members that the iPhones had been adequately tested and were safe to use on and in close proximity to their bodies . . . despite knowing that the RF radiation exposure exceeded federal limits when used in this matter and was linked to cancer and other health risks."[35]  Plaintiffs concede all iPhones have been certified by the FCC,[36] yet contend that Apple "cannot hide behind regulatory

---

the Recent National Toxicology Program Draft Report on Radiofrequency Energy Exposure (Feb. 2, 2018) (Ex. 4) ("[T]he current safety limits are set to include a 50-fold safety margin from observed effects of radiofrequency energy exposure."); FCC, *Specific Absorption Rate (SAR) For Cell Phones: What It Means For You* (Oct. 15, 2019) ("*SAR: What It Means For You*") (Ex. 5) ("ALL cell phones must meet the FCC's RF exposure standard, which is set at a level well below that at which laboratory testing indicates, and medical and biological experts generally agree, adverse health effects could occur.") (emphasis in original).

[32] Ex. 3 (FCC 2019 Order) ¶ 14 n.49.

[33] CAC, ECF 53 ¶ 4.

[34] *Id.* ¶¶ 144-146.

[35] *Id.* ¶ 178.

[36] Plaintiffs do not dispute that the FCC has certified (i.e., issued a "Grant of Authorization") for every iPhone model sold in the United States, including the models tested by the *Chicago Tribune* and those owned by Plaintiffs. The FCC Grants of Authorization for all iPhones are available on the FCC's website and accessible to the public at https://www.fcc.gov/oet/ea/fccid.  By way of example, Apple attaches hereto the Grants of Authorization for each of the frequency bands used for the iPhone 7, which is alleged to be owned by Paul Coletti (Ex. 6), an iPhone 7 Plus such as

7

1    compliance on testing to protect its marketing and advertising which knowingly misrepresents

2    and/or omits the actual RF radiation exposure to the user when smartphones are used while touching

3    or near the human body."[37]

4         Shortly after Plaintiffs filed the CAC, the FCC published the results of the tests it conducted

5    in light of the *Chicago Tribune* article that claimed iPhones exceeded federal limits.[38]  The FCC

6    tested the commercially available models of the iPhones tested by the *Chicago Tribune* lab, as well

7    as an additional model iPhone.[39]  The FCC found that, contrary to the results reported by the

8    *Chicago Tribune's* lab, none of the iPhones exceeded FCC limits:  "[A]ll of the tested phones

9    'produced maximum 1-g average SAR values less than the 1.6 W/kg limit specified in the FCC

10   rules.'"[40]  Thus, "the FCC Laboratory found no 'evidence of violations of any FCC rules regarding

11   maximum RF exposure levels.'"[41]

12        On January 2, 2020, Apple moved for dismissal under Rule 12(b)(1) and 12(b)(6), arguing,

13   *inter alia*, preemption of all asserted claims because the FCC certified all iPhones as compliant

14

15

16

-----

17   that alleged to be owned by David Hedicker (Ex. 7), and an iPhone 8, which is alleged to be owned
18   by Mark Weiler (Ex. 8).  Previously, this Court noted that "Apple provided the Commission's
     certification of its iPhones, but not the 'SAR report' or any documents regarding how the test
     separate distance was determined."  Mot. Dismiss Order, ECF 89 at 4.  To obtain certification, the
19   FCC requires submission of a SAR Report from an independent, FCC-accredited laboratory,
20   providing, among other things, the testing procedures used and measurements showing compliance
     with the FCC's requirements.  47 C.F.R. § 2.1033(b)(6).  SAR reports for all iPhone models, as
21   well as appendices to those reports, are publicly available through the FCC's website at
     https://www.fcc.gov/oet/ea/fccid.  Given each SAR report is multiple hundreds of pages in length,
22   Apple attaches herewith as Exhibit 9 an exemplar SAR report only.  Specifically, this exemplar is
     the SAR report for the model iPhone alleged to be owned by Mr. Coletti.

23   [37] CAC, ECF 53 ¶ 7; *see also id.* ¶ 8 ("These phones are legally considered compliant.").

24   [38] *Results of Tests on Cell Phone RF Exposure Compliance*, FCC, Dec. 10, 2019, available at
25   https://docs.fcc.gov/public/attachments/DOC-361473A1.pdf ("FCC 2019 Results") (Ex. 10).

26   [39] FCC Statement, ECF 101-1 at 9-10.  Its testing was limited to commercially available cell phone
     models.  *Id.* at 10 n.3.

27   [40] *Id.* at 9-10 (quoting Ex. 10 (FCC 2019 Results) at 9).

28   [41] *Id.* (quoting Ex. 10 (FCC 2019 Results) at 9).

with federal RF emissions limits, lack of standing, because Plaintiffs do not claim that they themselves suffered from any health injuries, and a series of other pleading deficiencies.[42]

The Court heard argument on Apple's motion to dismiss on February 6, 2020.[43]  At the motion to dismiss hearing, Plaintiffs acknowledged the results of the FCC Laboratory's subsequent tests demonstrating Apple's compliance.[44]  Without reaching the merits on any of Apple's grounds for dismissal, the Court converted Apple's motion to a motion for summary judgment and denied it without prejudice.[45] The Court also "invit[ed] the [FCC] to participate as an amicus curiae to better inform the Court on the proper application of its regulation and guidance."[46]  The Court stated that it is "inclined to hold that if the Apple products ultimately satisfy the Commission's standard, then all claims must be dismissed on preemption grounds."[47]

### C.    The FCC's Submission To The Court On The Proper Application Of Its Regulation And Guidance

On April 13, 2020, the United States submitted a Statement of Interest on behalf of the FCC.[48]  In its Statement, the FCC described its certification as "'the most rigorous approval process for RF devices.'"[49]  Certification requires testing "'at maximum power . . . under more extreme conditions than a user would normally encounter . . . .'"[50]  Further, the FCC's RF exposure limit is "'set at a level well below that at which laboratory testing indicates, and medical and biological experts generally agree, adverse health effects could occur.'"[51]  The FCC also confirmed that

---

[42] Apple's Mot. to Dismiss, ECF 62.

[43] Hr'g Tr., ECF 94.

[44] *Id.* at 21:17-19.

[45] Mot. Dismiss Order, ECF 89 at 1, 3-4.

[46] Req. for FCC to Appear as an Amicus Curiae, ECF 90.

[47] Mot. Dismiss Order, ECF 89 at 4.

[48] FCC Statement, ECF 101-1.

[49] *Id.* at 8 (quoting FCC Equipment Authorization Procedures, *available at* https://www.fcc.gov/general/equipment-authorization-procedures).

[50] *Id.* (quoting Ex. 3 (FCC 2019 Order) ¶ 14).

[51] *Id.* (quoting Ex. 5 ("*SAR: What It Means For You*')).

DECHERT LLP
ATTORNEYS AT LAW

"'phones legally sold in the United States' (*i.e.*, FCC-certified phones) 'pose no health risks.'"[52]

Moreover, the Statement described the FCC's requirements for consumer disclosures.[53]  As part of the certification process, manufacturers must furnish to the FCC "[a] copy of the installation and operation instructions to be furnished to the user."  47 C.F.R. § 2.1033(b)(3).  The FCC also provides relevant information on its website "regarding the RF emissions of FCC-certified cell phones."[54]  As the FCC explained, it has and "will continue to evaluate public information materials and update as appropriate" and "continue to ensure that relevant information is made available to the public."[55]  The FCC warns that disclosures for "FCC-certified cell phones that go beyond those mandated by the FCC could mislead consumers into believing that RF emissions from those phones are unsafe."[56]  More specifically, the FCC explained that "Plaintiffs' claims regarding the adequacy of Apple's disclosures risk precisely the kind of 'overwarning' regarding RF exposure that concerned the FCC."[57]

The FCC further explained to the Court in its Statement that "litigation like this" is "especially disruptive to the FCC's certification program because Plaintiffs seek relief based on third-party testing that may have inaccurately measured the RF emissions of Apple's iPhones."[58]  In attempting to answer the Court's question as to why the third-party testing may have yielded results that deviate from the results of the SAR reports submitted to the TCB for FCC certification (or the results from the FCC Laboratory's 2019 re-testing), the FCC reasoned that testing for RF emissions compliance under the particular configurations required by the FCC "requires detailed understanding of [the] design and antenna arrangements; most of this information is non-public and

---

[52] *Id.* (quoting Ex. 3 (FCC 2019 Order) ¶ 14).

[53] FCC Statement, ECF 101-1 at 17 (quoting Ex. 3 (FCC 2019 Order) ¶ 16); *see also* 47 C.F.R. § 2.1033(b)(3).

[54] FCC Statement, ECF 101-1 at 8; *see also* Ex. 3 (FCC 2019 Order) ¶ 16.

[55] Ex. 3 (FCC 2019 Order) ¶ 16; *see also* FCC Statement, ECF 101-1 at 17-18.

[56] FCC Statement, ECF 101-1 at 2.

[57] *Id.* at 19.

[58] *Id.* at 15.

proprietary."[59]  These details, the FCC explained, are "complex technical issues" that "underscore the need for a uniform certification regime."[60]  The FCC advised that its regime is compromised by "[l]awsuits like this one [that] would needlessly disrupt the Commission's certification process and improperly impede the marketing of cell phones that the FCC has found to be safe."[61]  And to the extent that Plaintiffs assert that the "FCC's certification procedures should require testing of cell phones at shorter separation distances [than the FCC requires], the Court lacks jurisdiction over them."[62]

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A factual dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party," and it is material if, under substantive law, it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party bears the burden of proof, the party moving for summary judgment may satisfy Rule 56's burden by "negat[ing] an essential element of the nonmoving party's claim" or "demonstrat[ing] . . . that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id.* at 331.  The non-moving party may not merely rest on its pleadings, but must instead produce substantial evidence in support of the complaint.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968).  As this Court noted, "[i]f plaintiffs believe they cannot yet present facts essential to justify their opposition, they will need to show as much by detailed affidavit or declaration pursuant to Rule 56(d)."[63]

---

[59] *Id.* at 16.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 12.

[63] Mot. Reconsideration Order, ECF 100 at 2.

Courts often stay discovery pending the resolution of dispositive motions, like Apple's motion here. *See Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (barring discovery pending resolution of dispositive motion); *Penn Advert. of Balt., Inc. v. Mayor & City Council of Balt.*, 63 F.3d 1318, 1322 (4th Cir. 1995) (affirming stay of discovery because preemption "issues presented to the district court were questions of law which could be resolved without further development of the factual record"), *vacated and remanded*, 518 U.S. 1030 (1996), *aff'd on remand*, 101 F.3d 332 (4th Cir. 1996).  When pending motions would dispose of the entire case, there is the potential that discovery will be wasteful or inefficient.  *See Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001) (staying discovery pending decision on dismissal and summary judgment motions that would be dispositive of "the entire case"); *see also Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (affirming a stay of discovery pending a motion for summary judgment premised on lack of subject matter jurisdiction).

## IV.   ARGUMENT

Plaintiffs intended to alarm the Court with third-party testing commissioned by Plaintiffs and the *Chicago Tribune* that yielded results exceeding FCC standards.  But the FCC foreclosed any "genuine dispute" of material fact when it dismissed third-party testing as immaterial: Such testing "may have inaccurately measured the RF emissions" because it requires a "detailed understanding" of designs and arrangements that are mostly non-public and proprietary.[64] And in any event, because the "FCC takes claims of non-compliance with its regulations seriously," it tested three commercially available iPhone models and found "no 'evidence of violations of any FCC rules regarding maximum RF exposure levels.'"[65]  Because there can be no dispute that the iPhones are certified by the FCC, this litigation cannot go forward without undermining and standing as an obstacle to the FCC's carefully calibrated testing requirements that it adopted after comprehensive review and consideration of all available information to balance its various

---

[64] FCC Statement, ECF 101-1 at 15, 16.

[65] *Id.* at 10, 15 (quoting Ex. 10 (FCC 2019 Results) at 9).

DECHERT LLP
ATTORNEYS AT LAW

objectives and promote uniformity in a highly technical area.  Nor can the litigation proceed without questioning the validity of those requirements, which is beyond this Court's jurisdiction.

### A.    The FCC's Submission Underscores How Plaintiffs Claims Are An Attack on Its Standards And Cannot Stand

Plaintiffs' contention that Apple has an obligation under state law to inform consumers that their iPhones pose health risks, notwithstanding the fact they are certified as by the FCC as compliant with federal RF emissions limits, directly undermines and conflicts with the FCC's considered judgment in developing uniform, nationwide regulations on RF emissions limits pursuant to Congressional directive.  Not only have other courts around the country deemed similar challenges preempted,[66] but the FCC has now weighed in and provided the Court with a thorough and reasoned explanation of how adjudication of these claims would undermine the FCC's considered policy judgment and interfere with its uniform scheme for regulating RF emissions from wireless devices.  The Court should accordingly grant summary judgment in Apple's favor.

### 1.    The FCC Statement Is Entitled To Deference.

The FCC's reasoning in its Statement is entitled to deference and warrants substantial weight.  "The statutorily authorized regulations of an agency will preempt any state or local law that conflicts with such regulations or frustrates the purposes thereof."  *City of N.Y.  v. FCC*, 486 U.S. 57, 64 (1988).  As a matter of law, courts should defer to an agency's interpretation of its own

---

[66] Since the FCC "made clear" its view that tort cases that challenge "the safety of FCC-certified wireless phones conflict with the federal policy objectives underlying the FCC's RF rules" (Brief for the United States as Amici Curiae, *Farina v. Nokia, Inc.*, 565 U.S. 928 (2011) (No. 10-1064) (certiorari denied), 2011 WL 3799082, at *11–12, at least eight trial and appellate courts have addressed the preemption issue as it applies to RF exposure generally, and each one has held that claims relating to the FCC's RF standards are conflict preempted.  *See, e.g.*, *Fontana v. Apple Inc.*, 321 F. Supp. 3d 850, 854-55 (M.D. Tenn. 2018) (holding that state warranty and tort claims alleging that FCC-compliant cell phones are unsafe due to RF emissions are "conflict/obstacle preempted" because "the adequacy of the RF exposure regulations" is left by Congress "to the FCC, not the court or a jury"); *Firstenberg v. Monribot*, 350 P.3d 1205, 1215-16 (N.M. Ct. App. 2015) (affirming dismissal of "lawsuits based on the premise that [RF] emissions from cell phones are harmful to human health . . . [as] conflict preempt[ed]").  *See also Bennett v. T-Mobile USA*, 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008) ("To allow state law challenges to the judgment of Congress and the FCC with respect to allowable levels of RF emissions would interfere with the goal of national uniformity in telecommunications policy.").

DECHERT LLP
ATTORNEYS AT LAW

regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (citation omitted); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (holding that an agency's view is entitled to "substantial deference" and usually should be given "controlling weight") (citation omitted). That is so even when the agency interpretation comes to a court in a brief, as it frequently does. *Chase*, 562 U.S. at 208 (deferring to an agency interpretation set forth in an amicus brief); *Balvage v. Ryderwood Improvement & Serv. Ass'n*, 642 F.3d 765, 776 (9th Cir. 2011) ("[A]n agency's litigation position in an amicus brief is entitled to deference if there is no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter") (quoting *Barrientos v. 1801–1825 Morton LLC*, 583 F.3d 1197, 1214 (9th Cir. 2009)).

Moreover, the Court should also defer to the agency's interpretation "given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 139 (1944)).[67] The degree of *Skidmore* deference courts accord to an agency's position statement is dependent on such factors as "the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008) (internal quotation marks, brackets,

---

[67] *See also Bank of Am. v. City and Cty. of San Francisco,* 309 F.3d 551, 563 (9th Cir. 2002) (deferring to reasonable interpretation by administering agency in amicus brief and interpretation letters, stating that "[w]e give 'great weight' to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement") (citation omitted); *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076, 1079 (9th Cir.2011) (deferring to the interpretation of a regulation advanced in an amicus brief by the Department of Labor); *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 548, 554–57 (9th Cir.2009) (deferring to the interpretation of a "mining-related directive" set forth in a "Memorandum to Regional Foresters" issued by the Forest Service); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 n.1 (9th Cir.2008) (deferring to an Office of ThriftSupervision ("OTS") legal opinion interpreting a regulation).

DECHERT LLP
ATTORNEYS AT LAW

and citation omitted); *see also Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013).

> **2.     Courts Elsewhere Have Deferred To The FCC's Views With Respect To RF Emissions In Dismissing Claims On Preemption Grounds.**

Other courts have given great weight to the FCC's views on whether allowing private litigation to proceed would undermine the FCC's policy decisions and uniform, technical scheme for regulating RF emissions.  In *Murray v. Motorola, Inc.*, for example, the D.C. Court of Appeals found that "plaintiffs' claims that are premised upon allegations that defendants' FCC-certified cell phone are unreasonably 'dangerous' because of RF radiation are barred under the doctrine of conflict preemption." 982 A.2d 764, 789 (D.C. 2009).  In so finding, the appellate court relied in large part on the FCC's amicus brief, which is substantially similar to the Statement filed here.  The FCC's brief in *Murray* "explained its belief that the RF radiation limits it adopted provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands."  *Id.* at 776 (citation omitted).  The Court of Appeals deemed the FCC's brief "significant" to its analysis and gave "weight" to the FCC's views on several issues.  *Id.* at 776-77.

*First*, it considered the FCC's "unique understanding of the statutes [it] administer[s] and [its] attendant ability to make informed determinations about how state requirements may pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation omitted).  *Second*, it accepted the FCC's "views about the impact of tort law on federal objectives," given that "the subject matter [of RF emissions regulation] is technical and the relevant history and background are complex and extensive."  *Id.* (citations omitted).  *Finally*, it found persuasive the FCC's argument that "verdicts that would hold defendants liable for damages for bodily injuries caused by cell phones that met the FCC RF radiation limit would necessarily upset [the] balance [the agency struck] and . . . contravene the policy judgments of the FCC regarding how safely and efficiently to promote wireless communication."  *Id.* at 777 (alterations in original) (internal quotation marks and citation omitted).  While the *Murray* court recognized that an

agency's legal conclusion is not entitled to deference, it explained that giving weight to the FCC's brief was appropriate because "the FCC ha[d] done more than set out a mere conclusion about preemption; rather it has explained how the RF radiation limits that it adopted reflected a balancing of policy considerations and how plaintiffs' claims that would hold defendants liable for injuries from FCC-certified cell phones conflict with that balance." *Id.* at 777 n.17.[68]

In *Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010), the Third Circuit similarly afforded weight to the FCC's view that the state-law causes of action would disturb the FCC's balance of its statutory objectives in upholding dismissal of the complaint on preemption grounds. *Id.* at 126-27. In *Farina*, the plaintiff claimed using cell phones without a headset exposed the user to unsafe amounts of RF radiation and brought a state-law challenge to the cell phone manufacturer's marketing of cell phones as safe. *Id.* at 104. Like the *Murray* court, the Third Circuit deferred to the FCC's "explanation of how state law affects the regulatory scheme," given the technical subject matter and complex and extensive background on RF emissions regulations and based on the FCC's "unique understanding" of the statute it administers and how state requirements may pose an obstacle to Congress's purpose and objectives. *Id.* at 126 (citation omitted). The Court noted that the FCC in its notice of rulemaking on RF emissions testing and limits "explicitly stated that the adoption of its SAR guidelines constituted a balancing of safety and efficiency" and has also cautioned that "state-law claims would upset that balance." *Id.* at 126-127. The Third Circuit found the Commission's views "support[ed] a finding of preemption" as to claims concerning FCC-certified phones. *Id.*

---

[68] While the *Murray* court ultimately allowed claims concerning pre-1996 cell phones, as well as certain claims under D.C.'s consumer protection act, to proceed, it explicitly qualified that it was not holding that "any and all [consumer protection] claims . . . may be read . . . to survive the preemption challenge." *Murray*, 982 A.2d at 784 & n.35. Insofar as *Murray* held that certain claims were not preempted by federal law, it is contrary to better reasoned authority from other federal appellate courts. *Farina*, 625 F.3d at 126; *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319-20 (6th Cir. 2017).

DECHERT LLP
ATTORNEYS AT LAW

### 3. The FCC Has Made Clear That Plaintiffs' Claims Conflict And Pose An Obstacle To Its Objectives.

Plaintiffs concede that the FCC requires cell phone manufacturers to ensure their phones comply with the FCC's SAR 1.6 W/kg limit through a rigorous program of testing.  *See* CAC, ECF 53 ¶¶ 92, 94, 115; *see also* 47 C.F.R. §§ 1.1307(b), 2.1091, 2.1093, 2.803. Plaintiffs do not dispute that iPhones complied with the FCC's RF emissions requirements and that the FCC certified iPhones for sale in the United States.[69] Yet Plaintiffs claim that when they conducted their own testing on certified iPhones, those tests showed SAR values above 1.6 W/Kg, which not only violates the FCC limits, but also poses a risk of harm which allegedly requires medical monitoring.[70]  But only the FCC can determine whether a cell phone is compliant with its regulations, and Plaintiffs claims serve as nothing more than an improper challenge to the FCC's regime in several ways.

First, the FCC has made clear that the suggestion that testing should be performed at distances other than what the FCC mandates is contrary to the FCC's guidelines, and the FCC-certified iPhones that the Plaintiffs claim tested above 1.6 W/Kg at the Plaintiffs' chosen distances are compliant with FCC limits.[71]  As the FCC explained in its Statement, the FCC recently "'decline[d] to revisit its current 'RF exposure evaluation procedures' for cell phones," and "expressly rejected arguments that it 'should require testing' of cell phones 'against the body,'" along the lines of what Plaintiffs suggest here.[72] Thus, "[a]llowing state law to impose a different standard through' through civil litigation 'permits a re-balancing of [the FCC's] considerations' and stands as an obstacle to the uniform implementation of the Commission's considered policy judgment."[73]

---

[69] *See, e.g.*, CAC, ECF 53 ¶ 8.

[70] Pls.' Opp'n to Mot. Dismiss, ECF 77 at 7.

[71] FCC Statement, ECF 101-1 at 11.

[72] *Id.* at 12 (citation omitted).

[73] *Id.* at 14 (quoting *Farina*, 625 F.3d at 123).

Second, the FCC advises that any claim that iPhones are noncompliant with FCC RF limits and unsafe—regardless of the distance at which those phones are tested and whether the distance is the same or closer than distances of testing submitted to the FCC for certification—is outside of the Court's purview.[74]   The FCC has already determined that all iPhones comply with its certification requirements—which Plaintiffs acknowledge—and "has found that RF emissions from FCC-certified cell phones pose no health risks."[75]   Accordingly, it would be unnecessary and severely disruptive to the FCC's uniform regulatory scheme to litigate the complex technical issues of RF emissions testing of "cell phones that the FCC has found to be safe."[76]   Moreover, in response to the *Tribune's* article, the FCC "'commenced its own testing program of the iPhones 'to determine if [they] comply with the FCC rules as asserted by [Apple] or if they are indeed operating over the RF exposure limits," and found "no 'evidence of violations of any FCC rules regarding maximum RF exposure levels.'"[77]

Third, while Plaintiffs claim that Apple should warn consumers that SAR levels purportedly exceed 1.6 W/Kg, when iPhones are carried close to the body, rendering them unsafe, the FCC—drawing on the complex, extensive history and background it has in studying and regulating RF emissions—concludes otherwise., not only as to the breadth of Apple's disclosures but also as to Plaintiffs' contention that iPhones carried in this manner are unsafe.[78]   As to Apple's disclosures, the FCC specifically stated that Apple's disclosures provide the required information to consumers about RF emissions and "insofar as plaintiffs contend that Apple was required to provide additional consumer disclosures . . ., those claims conflict with the FCC's contrary determination that its existing disclosure requirements adequately inform the American public."[79]   Indeed, the FCC has made clear that "no scientific evidence establishes a causal link between wireless device use and

---

[74] *Id.* at 13-15.

[75] *Id.* at 2.

[76] *Id.* at 16.

[77] *Id.* at 7-8 (citing Ex. 10 (FCC 2019 Results) at 3).

[78] FCC Statement, ECF 101-1 at 16, 19.

[79] FCC Statement, ECF 101-1 at 18, 20.

DECHERT LLP
ATTORNEYS AT LAW

cancer or other illnesses,"[80] and therefore all "phones legally sold in the United States pose no health risks."[81]   Nevertheless, the FCC set RF limits "with a large safety margin, well below the threshold for unacceptable rises in human tissue temperature."[82]   Thus, mandating the type of disclosures Plaintiffs contemplate here would be neither accurate nor helpful to consumers.[83] Instead, such disclosures risk contributing to "an erroneous public perception or overwarning of RF emissions from FCC certified or authorized devices."[84]

Consequently, the FCC takes the position that the issues raised in this litigation regarding safety and noncompliance severely interfere with its uniform, consistent RF emissions requirements and certification scheme, and the considered policy judgments underlying that scheme, and are "beyond the Court's jurisdiction and in any event preempted."[85]   The FCC's Statement is thorough and persuasive and consistent with the position it has repeatedly taken in notice and comment proceedings and in other private litigation concerning RF emissions and cell phone safety.  Like the *Murray* and *Farina* courts, this Court should give the FCC's Statement significant weight and find preemption here.

**4.    Plaintiffs' Efforts To Have This Court Adjudicate Whether Apple Violated The FCC's Requirements Undermines And Interferes With The FCC's Authority To Punish And Deter Fraud Against It.**

Aside from the obstacle preemption grounds elucidated by the FCC's Statement of Interest, the preemption doctrine developed in *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341 (2001), provides a separate basis for dismissing this case.  Even if Plaintiffs raised colorable

---

[80] Ex. 3 (FCC 2019 Order) ¶¶ 10-12.

[81] *Id.* at ¶ 14.

[82] FCC Statement, ECF 101-1 at 8; *see also supra* n.31 (collecting authorities noting that FCC's 1.6 W/kg limit builds in a 50-fold safety factor margin).

[83] FCC Statement, ECF 101-1 at 18.  As part of the certification process, manufacturers like Apple must furnish to the FCC "[a] copy of the installation and operation instructions to be furnished to the user."  47 C.F.R. § 2.1033(b)(3).  The FCC also provides relevant information on its website, including information for "skeptical" consumers.  Ex. 3 (FCC 2019 Order) ¶ 16; FCC Statement, ECF 101-1 at 17-18.

[84] FCC Statement, ECF 101-1 at 18.  As set forth in its Statement, "the FCC has a legitimate interest in guarding against 'overwarning' about the potential dangers of a product sold to consumers." *Id.*

[85] *Id.* at 2, 19, 20.

1    arguments that the iPhones were in fact noncompliant with FCC limits or emitted "unsafe" levels

2    of RF emissions, which they do not, Plaintiffs' claims are preempted because they amount to a

3    fraud-on-the-FCC theory that only the FCC can investigate and remediate.  *Buckman Co. v.*

4    *Plaintiffs' Legal Committee,* 531 U.S. 341 (2001); *In re Bextra & Celebrex Mktg. Sales Practices*

5    *& Prod. Liab. Litig.*, No. 05-1699, 2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006) (dismissing

6    claims premised on a manufacturer's failure to provide data or information to the FDA as

7    preempted).

8         In *Buckman Co. v. Plaintiffs' Legal Committee,* the plaintiffs asserted a state law fraud claim

9    against product manufacturers based on alleged misrepresentations those manufacturers made to

10   the Food and Drug Administration during pre-market approval.  531 U.S. 341 (2001).  The Court

11   dismissed plaintiffs' "fraud-on-the-FDA" claims because such claims conflict with "the federal

12   statutory scheme [that] amply empowers the FDA to punish and deter fraud against the

13   administration."  *Id.* at 348.

14        Plaintiffs here allege that "[t]he FCC requires cell phone manufacturers to ensure that their

15   phones comply with SAR limits,"[86] but that third-party testing of iPhones at an "FCC-accredited

16   laboratory under the same conditions" yielded results that exceeded federal limits and "are not an

17   aberration."[87]  Plaintiffs further allege that Apple "cover[ed] up the actual RF radiation emissions

18   of their smartphones" and "hid this type of information from consumers."[88]  Plaintiffs, without any

19   good faith basis, even compare Apple's conduct to "'Diesel Gate' – the Volkswagen emissions

20   saga," where the car manufacturer cheated the EPA's emissions standards by installing software to

21   improve performance results during EPA tests.[89]

22

23

24   _____

     [86] CAC, ECF 53 ¶ 92.

25   [87] *Id.* ¶¶ 127, 150.  Plaintiffs conceded at the hearing that the FCC re-tested certain commercially
     available iPhones and those iPhones were found to be FCC compliant.  Hr'g Tr., ECF 94 at 21:17-
26   19.

27   [88] *Id.* ¶¶ 4, 10.

28   [89] *Id.* ¶ 109.

DECHERT LLP
ATTORNEYS AT LAW

Under *Buckman*, these claims cannot proceed.  If the FCC-accredited lab used by Apple to test iPhones submitted false test results to the FCC or if Apple otherwise duped the FCC into believing that iPhones comply with RF emissions limits when they do not, the FCC, as the agency charged with overseeing the certification scheme, not private plaintiffs, should police the issue.

The FCC explained in its Statement that it "takes claims of non-compliance with regulations seriously" and engages in policing of potential fraud.  FCC Statement, ECF 101-1 at 15 (citation omitted); *see also* 47 C.F.R. §§ 2.945(b), (c), (d); *id.* §§ 1.80, 1.91, 1.93; *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("Congress has delegated to the Commission the authority to 'execute and enforce' the Communications Act, § 151, and to 'prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions' of the Act, § 201(b).").  When third-party testing arranged by the *Chicago Tribune* (the same lab utilized by Plaintiffs) suggested that iPhones did not comply with FCC regulations, the FCC investigated, and if the Commission "had found evidence that iPhones did not comply with RF limits, it would have taken appropriate measures to enforce those limits."[90]  Indeed, as the FCC Statement illustrates, just last month the FCC entered into a consent decree that resolved an enforcement action taken against a different cell phone manufacturer whose products failed to comply with the Commission's SAR limits and labeling and user manual requirements.[91]

Accordingly, since the FCC is amply empowered to punish and deter fraud against it, Plaintiffs' claims, which at their core are premised upon fraud-on-the-FCC, cannot proceed.

### 5.  This Court Lacks Jurisdiction Over Plaintiffs' Claims.

Though disguised as state-law causes of action, Plaintiffs' claims boil down to a challenge to the RF exposure limits and testing procedures established by FCC rules, and affirmed by the Commission as recently as December 2019.  As the FCC points out in its Statement, this Court does not have jurisdiction to hear challenges to FCC final orders.[92]  *See* 28 U.S.C. 2342(1)

---

[90] FCC Statement, ECF 101-1 at 15-16 & n.6.

[91] *Id.* (citing *BLU Products.  Inc.,* DA 20-305, ¶ 3 (Enf. Bur. released April 2, 2020), *available at* https://docs.fcc.gov/public/attachments/DA-20-305A1.pdf.).

[92] FCC Statement, ECF 101-1 at 11.

(providing "exclusive jurisdiction" to federal courts of appeals to "to enjoin, set aside, suspend . . . or to determine the validity of" final FCC orders); *see also* 47 U.S.C. § 402(a).  Here, Plaintiffs cannot avoid the Court's jurisdictional limitation by asking it to enjoin action that is the outcome of an FCC Order.  *F.C.C. v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) (holding that the district court lacked jurisdiction when a complaint "[i]n substance, . . . raised the same issues and sought to enforce the same restrictions . . . as did a petition for rulemaking that was denied by the FCC").  Although "Plaintiffs purport not to take issue with the FCC's RF exposure limits," they "seek to call Apple to account for testing its iPhones in a manner that is not required by the Commission's testing procedures."[93]  Doing so necessarily implicates the FCC's recent decision to retain the established RF exposure limits and testing protocols and is therefore beyond this Court's jurisdiction.

### B.   The Court Should Stay Discovery Pending Its Decision

The Court has the power to stay this action pursuant to its inherent "powers to control its own docket and to provide for the prompt and efficient determination of the cases pending before it." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936); *see also Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010) (staying case pending appeal of defense "[s]ince three of Plaintiff's four claims" depended on the defense and resolution "'would alter the direction of the current proceedings'") (citation omitted).  In determining whether a stay is warranted, courts weigh "the competing interests which will be affected by the granting or refusal to grant a stay." *Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244 (9th Cir. 1972).  The competing interests at issue here include "the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

A stay during the pendency of a preemption motion would be the most efficient use of judicial resources and will reduce potentially needless or wasteful discovery.  *See, e.g., Gale v.*

---

[93] *Id.* at 12; *see also* CAC, ECF 53 ¶¶ 121, 124, 141-42 (describing testing at separation distances shorter than the FCC's testing procedures mandate).

1    *Mentor Worldwide, LLC*, No. 19-2088, 2019 WL 2567790, at *4 (D. Kan. June 21, 2019) (granting

2    motion to stay discovery while motion to dismiss on preemption grounds was pending); *Bearden*

3    *v. E.I. du Pont de Nemours and Co.*, No. 16-158, 2016 WL 11301378, at *2 (M.D. Ga. Nov. 2,

4    2016) (granting motion to stay discovery where motion to dismiss on preemption grounds "could

5    entirely dispose of" the case, and the stay would therefore "avoid the burden of unnecessary and

6    potentially fruitless discovery"); *Jenkins v. Medtronic, Inc.*, No. 13-2004, 2014 WL 10384962, at

7    *3 (W.D. Tenn. June 30, 2014) (denying plaintiffs' motion for discovery and finding that "the best

8    use of judicial resources and the most expeditious process for the litigation of this case would be

9    better served if the parties were able to fully brief Defendants' Motion to Dismiss [on preemption

10   grounds] first and then address any discovery issues, if any viable claims are left"); *see also Barnes*

11   *v. Howmedica Osteonics Corp*, No. 09-2556, 2010 WL 11565343, at *3 (N.D. Ala. Dec. 14,

12   2010) (noting that the court had previously granted motion to stay during pendency of preemption

13   motion, finding "no discovery necessary to determine the preemption questions").

14          Notably, Plaintiffs did not oppose a stay pending a decision on Apple's Motion to Dismiss,

15   agreeing to the start of discovery 14 days after a final order.[94]  As this Court has recognized:

16          After full ventilation of the viability *vel non* of the complaint, we will all be in a
            much better position to evaluate how much, if any, discovery to allow.  If, among
17          other possible outcomes, the complaint proves to be solid save for perhaps a single
            soft element for which evidence would normally be outside the reach of plaintiffs'
18          counsel without discovery, then it may be that a narrowly-directed and less
            burdensome discovery plan should be allowed with leave to amend to follow.  If,
19          however, the complaint proves to be so weak that any discovery at all would be a
            mere fishing expedition, then discovery likely will be denied.  Of course, if the
20          complaint is sustained, then discovery will proceed apace.  The immediate point is
            that adjudicating the motions to dismiss will shed light on the best course for
21          discovery.

22   *In re Graphics Processing Units Antitrust Litig.*, No. 06-07417, 2007 WL 2127577, at *5 (N.D.

23   Cal. July 24, 2007) (Alsup, J.).  Accordingly, Apple respectfully requests a stay of discovery

24   pending decision on these threshold issues.

25

26

27   _____

     [94] ECF 82 at 7 ("Plaintiffs will need nine months for discovery and propose that it begin 14 days
28   after the Court rules on Apple's Motion to Dismiss.").

1    V.    **CONCLUSION**

2           For the foregoing reasons, Apple respectfully requests that the Court grant summary

3    judgment in Apple's favor or dismiss Plaintiffs' claims for lack of jurisdiction and stay the case

4    pending decision on the instant motion.

5

6    Dated: May 1, 2020                          Respectfully submitted,

7                                                DECHERT LLP

8
                                                By:   */s/ Christina G. Sarchio*
9                                               Christina Guerola Sarchio (*pro hac vice*)
                                                Amisha R. Patel (*pro hac vice*)
10                                              1900 K Street, NW
                                                Washington, D.C.  20006-1110
11                                              Telephone:  202-261-3300
                                                Facsimile:  202-261-3333
12                                              christina.saricho@dechert.com
                                                amisha.patel@dechert.com
13
                                                Jonathan S. Tam (Bar No. 304143)
14                                              One Bush Street
                                                San Francisco, CA  94104-4446
15                                              Telephone:  415-262-4518
                                                Facsimile:  415-262-4555
16                                              Jonathan.tam@dechert.com

17                                              Mark S. Cheffo (*pro hac vice*)
                                                1095 Avenue of the Americas
18                                              New York, NY  10036-6797
                                                Telephone:  212-698-3814
19                                              Facsimile:  212-698-3599
                                                mark.cheffo@dechert.com
20
                                                *Attorneys for Defendant Apple Inc.*
21

22

23

24

25

26

27

28